CUMMINGS, Plaintiff in error, v. STATE, Defendant
in error.

*No. State 233 (1974). Argued February 4, 1976.—*
*Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 499.)

For the plaintiff in error there was a brief by *Patricia M. Heim,* Legal Aid Society of Milwaukee, and oral argument by *Paula Lorant.*

For the defendant in error the cause was argued by *William L. Gansner,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J. Plaintiff in error, Michael Cummings, was convicted after a jury trial of delivery of a controlled substance, to wit: lysergic acid diethylamide (LSD), in violation of secs. 161.41 (1) (b) and 161.14 (4) (j), Stats.[1] He was sentenced to three years' imprisonment.

The principal issue raised on appeal is whether the trial court abused its discretion in not granting a defense motion for a continuance based on the allegedly improper failure of the state to timely disclose the identity of a transactional informant.

On November 28, 1972, Michael Cummings concededly sold ten tablets of LSD to Milwaukee police officer Glenn Lewis for $10. Two others were present at the transac-

---

[1] "161.41 **Prohibited acts A—penalties.** (1) Except as authorized by this chapter, it is unlawful for any person to manufacture or deliver a controlled substance. Any person who violates this subsection with respect to:

". . .

"(b) Any other controlled substance classified in schedule I, II or III, may be fined not more than $15,000 or imprisoned not more than 5 years or both."

"161.14 **Schedule I.** (1) The controlled substances listed in this section are included in schedule I.

". . .

"(4) Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers and salts of isomers is possible within the specific chemical designation:

". . .

"(j) Lysergic acid diethylamide."

tion: a police informant named Fred Viele, and the individual who had introduced Lewis and Viele to Cummings, Dale Sommers. The only defense raised by Cummings is that he was entrapped into selling the LSD to Lewis.

The state's case consisted of testimony by a police department chemist identifying the tablets sold as LSD, and by officer Lewis. Lewis testified that his informant, Viele, had introduced him to Sommers, and that the three of them had gone to Cummings' residence where Sommers introduced them to Cummings. Lewis told Cummings that he wanted to purchase some "acid." Cummings replied that the 50 "hits" (doses) of acid in the house belonged to his roommate, but that he could sell it on his roommate's behalf. Lewis testified that Cummings' demeanor was that of a "businessman," and that, although Lewis indicated that he himself was a drug user, he had not conveyed the impression that he was a "junkie" (drug addict) or physically ill. According to Lewis, he asked for ten "hits," but inquired whether he could purchase larger amounts if the product was satisfactory, to which Cummings answered yes. Cummings disappeared for a short time, and returned with a plastic bag containing numerous tablets. Cummings gave Lewis ten of them in exchange for $10.

On cross-examination, the defense attempted to question Lewis concerning any prosecutorial lenience shown to Viele as a result of Viele's cooperation as a police informant. The trial court excluded such testimony as immaterial, and Cummings now asserts that this exclusion was error. We agree with the trial court; the excluded testimony has no relevance to anything except Viele's credibility, and since Viele did not testify, his credibility was not an issue.[2]

---

[2] The defense cites *Gilmore v. United States* (5th Cir. 1958), 256 Fed. 2d 565, but that case is not in point. There the court had determined that an unnamed informant should have been dis-

The defense consisted of the testimony of Dale Sommers and Michael Cummings. Sommers testified that Fred Viele, an acquaintance, had arranged a meeting between Sommers, Viele and Lewis. They had gone to Cummings' house, where Sommers expected that they would be able to buy LSD although not necessarily from Cummings, since others lived there also. On arrival, Sommers informed Cummings that his companions wanted to purchase some LSD. Viele had said that he wanted thousands of LSD tablets for distribution to friends, to which Cummings responded that he had none, according to Sommers. However, Viele was very persistent, and Lewis kept acting "nuttier." Cummings continued to say that he had no LSD, but finally offered to give them, gratis, two or three hits "to turn them on." According to Sommers, Cummings at no time offered to sell LSD to Viele or Lewis, but they indicated they would rather buy ten hits and "make it a square deal all around." Sommers testified that the "street price" for an LSD tablet was usually about $2.

Defendant Cummings testified that he had been in North Dakota until four or five days before the sale, and that he had had no "acid" in his possession since his return. When Sommers, Viele, and Lewis arrived, Cummings was just awakening. Viele did most of the talking, stating that he had orders for 10,000 hits, to which Cummings responded that he didn't have any. According to Cummings, Lewis was "doing pretty much of the acting," appearing rather "spaced out." Cummings testified that he knew that Viele had a reputation as a "junkie," and considering Lewis' demeanor, Cummings was motivated by a desire to get them out of his house.

closed, and merely commented that his behavior, motives, and credibility would have been important in the trial in connection with his testimony. The court did not hold that such evidence was admissible if he did not testify.

He testified that he feared they might steal some of his belongings if they stayed there. Viele kept asking for LSD, Cummings stated, giving different reasons for wanting it. Finally Viele and Lewis mentioned they wanted to personally use the drug that evening, and Cummings offered to give them a few "hits" out of the "house supply": LSD tablets that, he testified, belonged to no one in particular and were available to any of the residents of the house. However, Lewis offered to pay, brought forth some money, and asked the price. Cummings said it was a dollar a piece; he testified that the market price was between $1 and $2 a tablet, and sometimes more.

The principal issue here concerns the witness who did not testify, Fred Viele, who was incarcerated in Florida at the time of this trial. Cummings argues that the state failed to timely inform him of Viele's identity and whereabouts, in order that the defense might ascertain his testimony and, if exculpatory, use him as a witness.

At the preliminary hearing of this case on July 20, 1973, the trial court set a September 14 deadline for the filing of motions. No motions to discover Fred Viele's identity or location were filed by this date, although it is apparent from the record that defense counsel was fully aware of Viele's existence as early as the preliminary hearing. Only on October 1, ten days before the trial was scheduled, did the defense file a motion to compel disclosure of Viele's name and location and, additionally, to require that the state produce him. On October 10, the day before trial, the prosecuting attorney orally confirmed defense counsel's suggestion that the informant was Fred Viele, and added that Viele was in Florida.[3] On the day of the trial, the unsatisfied defense

---

[3] There was other evidence that Cummings knew that the other transactional witness was Fred Viele, although we do not rest this decision on that point. Cummings testified that he knew

motion to produce Viele was heard and denied by the trial court; no appeal has been taken on this matter. Defense counsel also moved, for the first time, that the trial be adjourned to permit investigation of Viele's possible testimony. This motion was also denied.

The trial proceeded and at the close of the testimony described above, the defense requested that a "missing witness" instruction be given to the jury, to the effect that Fred Viele's absence permitted an inference that his testimony would have been adverse to the state. The request was denied on the ground that Viele was then in custody of Florida authorities. An instruction was given describing the defense of entrapment. The jury returned a verdict of guilty.

The first issue here is whether the state was required to inform the defense of Viele's identity and whereabouts before a defense motion to compel such disclosure was heard and granted by the court. The defendant cites the case of *Roviaro v. United States* (1957), 353 U. S. 53, 77 Sup. Ct. 623, 1 L. Ed. 2d 639, for the proposition that the failure to disclose Viele's identity and whereabouts until the day before trial is "fundamentally unfair." In *Roviaro*, the government refused to identify an informant who had been engaged in a drug transaction with the defendant, under the observation, from some distance, of government investigators. The informant was the sole participant in the transaction other than the defendant, and the only person from whom the defendant could have elicited exculpatory evidence, such as testimony concerning entrapment. Moreover, there was specific testimony that the informant had subsequently denied ever having seen the defendant. Under these clearly compelling circumstances, the Supreme Court found error in not requiring disclosure of the informant's identity after a timely de-

Viele by reputation. He said Viele was a junkie and said "I heard about Fred from some people that I knew from VVAW."

fense request. *Roviaro* sets forth a "facts-and-circumstances" test for determining when refusal to identify an informant is error. Speaking of the general privilege accorded to informants, the court said (353 U. S. at pages 60–62) :

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

". . .

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

*Roviaro* is readily distinguishable from the present case on a number of grounds. Fred Viele was not the only person present, as was the informant in *Roviaro*. Fred Viele has never indicated any doubt about Cummings' guilt, as did the informant in *Roviaro*. Most obviously, the prosecution in the present case did not refuse to identify the informant, as it did in *Roviaro*. The failure of communication here resulted largely from defense counsel's conceded failure to file a timely motion for disclosure. The defense seems to argue that before the hearing the prosecution should have seized the initiative and contacted defense counsel to convey the information; but the state has as much right to due process as a defendant. The state has a right to a hearing on the issue of whether an informant's identity must be divulged. In view of the prosecution's voluntary dis-

closure on October 10, when asked, it would appear that Cummings could equally well have secured the information concerning Viele and his presence in Florida by contacting the prosecuting attorney on October 1, when his motion was tardily filed. The record is bare of any attempt by the defense to schedule a hearing on the motion prior to the day of trial.

Cummings also argues that the trial court should have adjourned the trial on his motion, made for the first time on the day of trial. Adjournment of a trial is within the court's discretion. *State v. Davis* (1975), 66 Wis. 2d 636, 655, 225 N. W. 2d 505; *State v. Calhoun* (1975), 67 Wis. 2d 204, 218, 219, 226 N. W. 2d 504. The state has an interest in the orderly process of trials being conducted when they are scheduled. The trial date here had been known for several weeks. We conclude that the trial court did not abuse its discretion. It is clear from this record as recited above that the delay in attempting to get the identification and whereabouts of Viele was due entirely to the procrastination of the defendant.

The final issue raised by the defense is whether the trial court erred in refusing to give a "missing witness" instruction with respect to Fred Viele. This instruction was properly denied. It applies where a party fails to call a material witness "within its control." In the present case, it is undisputed that Viele was incarcerated in Florida at the time of trial. The witness was obviously not within the control of the state.[4] The trial court did not err in refusing to give this instruction.

*By the Court.*—Judgment affirmed.

---

[4] Wis J I—Civil, 410:

"410 *Witness: Absence*

"You are instructed that if a party fails to call a material witness within his control, or whom it would be more natural for that party to call than the opposing party, and the party fails to give a satisfactory explanation for his failure to call the witness, then you may infer that the evidence which he would give would be unfavorable to the party failing to call him."