STATE of Wisconsin, Plaintiff-Respondent,†

v.

John C. OUTLAW, Defendant-Appellant.

Court of Appeals

*No. 80–1727–CR. Submitted on briefs April 30, 1981.—Decided September 23, 1981.*
(Also reported in 311 N.W.2d 235.)

† Petition to review granted.

232

For the defendant-appellant the cause was submitted on the brief of *Glenn L. Cushing,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *John J. Glinski,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

BROWN, J. The issue in this case is whether the prosecution was entitled to withhold information at trial concerning the identity of an informant. It appears rea-

sonably probable from the record that the informant would have been able to give testimony relevant and helpful to the accused. Failure to require the prosecution to disclose the informant's identity in these circumstances is reversible error.

On October 10, 1978 and again on October 19 and 25, a state undercover agent, Gary Martine, successfully purchased cocaine on the campus of the University of Wisconsin—Oshkosh. Five months later, a complaint was issued charging John C. Outlaw with three counts of delivery of a controlled substance, contrary to secs. 161.-16(4) and 161.41(1)(b), Stats., and party to a crime, contrary to sec. 939.05, Stats.

At the preliminary hearing, agent Martine testified to only four people being present just prior to the first transaction. The four people were Anthony McCalla, Cle Gray, John Outlaw and agent Martine. Martine named McCalla and Gray as accomplices of Outlaw in the sale of cocaine. Martine testified that he first saw the trio in an automobile at a fast-food restaurant parking lot. He testified to meeting the same three individuals a short time later in a dormitory room on the University of Wisconsin—Oshkosh campus. A discussion concerning the cocaine sale took place in the dormitory room. Then, according to the testimony, Martine and Outlaw walked to a nearby lavatory where the deal was consummated. At a *Wade-Gilbert* hearing,[1] Martine reiterated essentially the same set of facts as were given at the preliminary examination, including that which is most important to the analysis of this case, that only four people were present just prior to the first transaction.

[1] *United States v. Wade*, 388 U.S. 218 (1967); *Gilbert v. California*, 388 U.S. 263 (1967).

During opening statements at trial, the defense presented its theory of the case; namely, that Outlaw was not present during the transactions and that this was a case of mistaken identity. During direct examination, Martine, for the first time, presented a different account of who was present just prior to the culmination of the initial sale. He stated that there were five people present in the dormitory room rather than four. No follow-up questions were asked by the prosecutor regarding the identity of the fifth person.

On cross-examination, the defense counsel specifically asked who the fifth person was. Martine testified that the fifth person was an informant. When asked why he failed to mention the existence of the fifth person during the preliminary hearing and during the *Wade-Gilbert* hearing, Martine said the failure was not intentional; he merely forgot.

Foundation questions were then asked by the defendant. Martine admitted having observed the fifth person in the car with McCalla, Gray and Outlaw while at the fast-food restaurant. Additionally, Martine admitted that the informant was also in the dormitory room where the discussions preceding the first sale of cocaine were had. Martine further explained that the informant was in a position to see and hear the whole conversation.

The defendant then demanded the identity of the informant, but the prosecutor claimed a privilege not to disclose the identity of the informant pursuant to Rule 905.10, Stats. The trial court implicitly ruled that the state had an absolute privilege not to disclose the informant's identity and reasoned that "the trier of fact is going to have to rely on . . . those witnesses that are present and if [the state chooses] to leave out witnesses that could lend more information here, I guess that's their privilege to do so and I'll have to deny the Motion."

The trial court was mistaken. The state has no absolute privilege to withhold the identity of an informant.[2] Rule 905.10, Stats., recognizes the use of informants as an important aspect of law enforcement, whether the informant is a citizen who steps forward with information or is a paid undercover agent.[3] In either event, the basic importance of anonymity in the effective use of informers is apparent.[4] The rule thus allows the state the privilege of withholding the informant's identity. There are, however, exceptions where the state will not be allowed to assert the privilege. These exceptions are clearly spelled out in Rule 905.10(3)(a), (b) and (c), Stats.[5] The exception we are concerned with is found

[2] The state does, of course, have the option of dismissing the case against the defendant, thereby maintaining the secret identity of the informant.

[3] *See* Federal Advisory Committee's Note to Rule 905.10(1), Stats.

[4] *Id.*

[5] Rule 905.10, Stats., states in full as follows:

905.10 Identity of informer. (1) RULE OF PRIVILEGE. The federal government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

(2) WHO MAY CLAIM. The privilege may be claimed by an appropriate representative of the federal government, regardless of whether the information was furnished to an officer of the government or of a state or subdivision thereof. The privilege may be claimed by an appropriate representative of a state or subdivision if the information was furnished to an officer thereof.

(3) EXCEPTIONS. (a) *Voluntary disclosure; informer a witness.* No privilege exists under this rule if the identity of the informer or his interest in the subject matter of his communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness for the federal government or a state or subdivision thereof.

(b) *Testimony on merits.* If it appears from the evidence in the case or from other showing by a party that an informer may be

in Rule 905.10 (3) (b), Stats., relating to the mechanism for determining when an informant may be able to give testimony allegedly critical to the defendant's case.

able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case or of a material issue on the merits in a civil case to which the federal government or a state or subdivision thereof is a party, and the federal government or a state or subdivision thereof invokes the privilege, the judge shall give the federal government or a state or subdivision thereof an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits but the judge may direct that testimony be taken if he finds that the matter cannot be resolved satisfactorily upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the federal government or a state or subdivision thereof elects not to disclose his identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on his own motion. In civil cases, he may make an order that justice requires. Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the federal government, state or subdivision thereof. All counsel and parties shall be permitted to be present at every stage of proceedings under this subdivision except a showing in camera at which no counsel or party shall be permitted to be present.

(c) *Legality of obtaining evidence.* If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, he may require the identity of the informer to be disclosed. The judge shall on request of the federal government, state or subdivision thereof, direct that the disclosure be made in camera. All counsel and parties concerned with the issue of legality shall be permitted to be present at every stage of proceedings under this subdivision except a disclosure in camera at which no counsel or party shall be permitted to be present. If disclosure of the identity of the informer is made in camera, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the appropriate federal government, state or subdivision thereof.

The prosecution's privilege to withhold the identity of an informant is qualified by "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro v. United States,* 353 U.S. 53, 62 (1957). An informant's identity cannot be concealed from the defendant when it is critical to his case. *Branzburg v. Hayes,* 408 U.S. 665, 698 (1972). Rule 905.10(3)(b), Stats., provides the procedural framework for deciding a motion to reveal the identity of the informant. Rule 905.10(3) (b) states that if the informant "may be able to give testimony necessary to a fair determination of the issue of guilt or innocence," then the court must conduct an *in camera* hearing, at which either the testimony or affidavits of the informant is considered. Our immediate task is to interpret how Rule 905.10(3)(b) is to be applied.

The language of Rule 905.10, Stats., was taken directly from the then proposed Federal Rules of Evidence. The Federal Advisory Committee Note refers to *Roviaro v. United States,* 353 U.S. 53, as a leading case on the question of disclosure in a criminal prosecution and makes it clear that the rule was meant to embody the analysis that appears in *Roviaro.* The opinion in *Roviaro* has been used as a starting point for deciding the question of disclosure of the identity of the informant in a number of Wisconsin cases. *See Cummings v. State,* 73 Wis. 2d 554, 560–61, 243 N.W.2d 499, 501–02 (1976); *State v. Midell,* 40 Wis. 2d 516, 523, 162 N.W.2d 54, 57 (1968), and *Stelloh v. Liban,* 21 Wis. 2d 119, 127, 124 N.W.2d 101, 105 (1963). We thus must look to *Roviaro* for determining when disclosure is required under Rule 905.10(3)(b), Stats.

*Roviaro,* like this case, involved a criminal prosecution for a drug transaction. The informant in *Roviaro* had notified federal and state agents that he was intend-

ing to purchase narcotics from the defendant and subsequently made the buy while under police surveillance. The informant was the only person present during the actual exchange of narcotics, although a federal agent was concealed in the trunk of the car in which the exchange took place. In holding that the trial court had erred in refusing to require the government to divulge the name of the informant upon the request of the defense, the Supreme Court stated:

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.

*Roviaro,* 353 U.S. at 60–61.

The general standards for determining whether an exception to the privilege should be made are discussed in *Roviaro,* as follows:

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend upon the particular circumstances of each case . . . .

*Roviaro,* 353 U.S. at 62.

The proposed federal rules, subsequently adopted in Wisconsin as Rule 905.10(3)(b), Stats., formulated the *in camera* hearing to provide salutary means by which to satisfy the balancing of interests required by *Roviaro. United States v. Rawlinson,* 487 F.2d 5, 7 n. 2 (9th Cir. 1973), *cert. denied,* 415 U.S. 984 (1974). Thus, Rule 905.10(3)(b) is to be applied as follows. The ini-

tial burden is on the defendant to show a necessity of disclosure of identity of the informant. *United States v. Alvarez,* 469 F.2d 1065, 1066 (9th Cir. 1972). When the defendant, through evidence or other showing, has made it reasonably probable that the informant can give *relevant* testimony, then the burden shifts to the prosecution to overcome this inference with evidence that the informant cannot supply information material to the defense. *United States v. Eddings,* 478 F.2d 67, 71 (6th Cir. 1973). In other words, the defendant must show first that the informant's testimony would be relevant. However, the interest of law enforcement in protecting the identity of the informant and continuing the prosecution can still be served if the *in camera* hearing demonstrates that the informant's identity would not be *helpful* to the defense. In this way, the public interest in protecting the flow of information is adequately balanced by the individual's right to prepare his defense. Rule 905.10 (3)(b), therefore, provides the proper mechanism for determining the balancing that *Roviaro* mandates must be made.

We conclude, from the evidence, that the informant's testimony would be necessary to a fair determination of the issue of guilt or innocence in a criminal case since it was relevant. Outlaw stood charged with selling cocaine to an agent on three separate occasions. He denied being the person who sold the cocaine and, through an alibi defense, placed the identity issue directly into contention. This "wrong man" defense was underscored when the defendant pointed out that he was arrested five months after the events. Defendant's theory of defense, therefore, was to attack the credibility of the state's witness, agent Martine. During trial, Martine admitted that an informant was present during discussions between the defendant and himself. These discussions culminated in the sales transaction. Martine fur-

ther admitted that the informant was in a position to hear the conversation between the defendant and himself. The informant was also in a position to identify the defendant, if indeed the defendant was the person who sold the cocaine. Additionally, the informant was the person who originally introduced the defendant to Martine. Thus, the facts demonstrate that the informant was an active participant to the first transaction and could have amplified or contradicted the identification made by agent Martine. The trial court found as much when it stated that the informant might "lend some more information here."

The informant's testimony may also have been important in light of Martine's overall credibility. The complaint failed to mention an additional party being present during discussions leading to the first transaction. At the preliminary hearing, agent Martine listed all of the persons present during the discussions leading to the first transaction but did not mention the informant as being one of them. At a *Wade-Gilbert* hearing following the preliminary examination, he again discussed who was present just prior to the first purchase and gave no indication that an additional person was present. Finally, at trial, Martine added one more person to the scenario. When it was established that this supplemental person was an informant, the defendant demanded his identity so he could attempt to call the person as a witness. The defendant claimed that he did not know this person's identity. Martine's credibility was at stake. The purpose of his inconsistent statements might have been to protect the unnamed informant. That is a reasonable inference. On the other hand, the inconsistent statements might have been intended to prevent conflicting testimony from the informant relating to identification of the accused. The informant's testimony may well have answered the question.

Furthermore, the informant's testimony would be relevant because it would not merely be cumulative evidence in the defendant's case. In *Roviaro,* the United States Supreme Court placed particular emphasis upon the fact that the informant was the only witness in a position to amplify or contradict the testimony of the government witness, other than the defendant himself. 353 U.S. at 64. We have the same situation here because the informant would be the only witness in a position to amplify or contradict the testimony of the government witness, other than Outlaw himself. Both Cle Gray and Anthony McCalla refused to testify on fifth amendment grounds despite being subpoenaed by the defendant.

Finally, although the informant was present at only the first transaction, the entire case was, as the assistant district attorney himself put it, a battle of credibility between the defendant and agent Martine. Outlaw denied ever meeting Martine or participating in any of the sales. Since identity was an issue in all three counts, the informant's testimony, if helpful to the accused, could have an impact upon agent Martine's credibility.

Because the informant was a transactional witness, was the only witness in a position to amplify or contradict the testimony of agent Martine other than the defendant and because the issue of identity was critical to the defendant's case, testimony by the informant would be relevant.

As stated above, even if it is reasonably probable that the informant can give relevant testimony, Rule 905.10 (3) (b), Stats., directs that an *in camera* proceeding take place because it provides means by which to satisfy the balancing of the interests of *Roviaro.* The interests of law enforcement can still be served if the government can overcome the inference of relevancy with evidence

that the informer cannot supply information material to the defense. When we originally considered this case, we were certain that the informant's testimony would be relevant to the case, but we did not know if it would be helpful. Since there had been no *in camera* proceeding in the trial court, there was no information in the record. We, therefore, issued a remand order to the trial court to conduct an *in camera* interview with the informant or, in the alternative, to receive affidavits from the informant. The trial court has now supplemented the record of this case. We note that this procedure of remanding the case for an *in camera* interview has been used in *United States v. Freund,* 525 F.2d 873 (5th Cir.), *aff'd after remand,* 532 F.2d 501, *cert. denied,* 426 U.S. 923 (1976). Attached to the transcript of the proceeding is the trial court's finding as directed in our order.[6] The trial court directed that testimony be taken and proceeded to question the informant with the court reporter being the only other person present.

The transcript indicates that the informant remains active in undercover activities. He was characterized by a supervising agent as "undoubtedly the most reliable subject with whom I have ever worked." The informant had met the party identified as John Outlaw prior to

---

[6] The state shall, within sixty days from the date of this decision, supply affidavits or, if the trial court directs, testimony *in camera* pursuant to Rule 905.10, Stats., to determine whether the informant's testimony might be helpful to the defense. The trial court shall then complete its review within ten days following receipt of either the affidavits or completion of the testimony and shall make a finding whether there is a reasonable probability that the informant can give testimony helpful to the defense. The affidavits or transcripts of the testimony, if there are any, shall be sealed and returned to this court. The trial court's finding need not be sealed, and copies of the finding shall be sent by the trial court to the parties. If the state cannot locate the informant within sixty days of this order, it shall so state to this court, and the case shall be returned to this court.

the date of the initial sale. He arranged a meeting with this party and others to take place on October 10, 1978. The purpose of the meeting was to introduce agent Martine to these individuals so that Martine could make a transaction. The meeting was first conducted at a fast-food restaurant parking lot between McCalla, Gray, the person identified as Outlaw and Martine. Following the introductory meeting, it was agreed that a cocaine transaction would be further discussed at the dormitory. The group, including the informant, then met at the dormitory. The meeting lasted for approximately ten minutes.

At the *in camera* interview, the informant testified that he had been shown photographs of John Outlaw just prior to the *in camera* hearing. He stated that he would not be able to identify John Outlaw as the same person who identified himself as John Outlaw on the day of the October 10 transaction. Further, he would not have been able, at any time, to make a positive in-court identification of Outlaw as being one of the individuals present.

The trial court concluded that the informant would not have been helpful to the defense, to a reasonable probability. The trial judge did not conclude that the informant would be unhelpful because his testimony would be damaging to Outlaw's case. Rather, the trial judge concluded that the informant would be unhelpful because agent Martine's testimony was so overwhelmingly convincing that the informant's unequivocal lack of identification would not have been beneficial to the defendant. We think the trial court employed a much too limited view of the circumstances in which fundamental fairness and Rule 905.10(3)(b), Stats., require the disclosure of the identity of the informant.

In reviewing the trial court's conclusion following the *in camera* interview, we hold that the scope of review is

whether the trial court's decision is a reasonable exercise of discretion. *United States v. Hernandez-Berceda,* 572 F.2d 680, 682 (9th Cir.), *cert. denied,* 436 U.S. 949 (1978). *See also United States v. Toral,* 536 F.2d 893, 897 (9th Cir. 1976). Discretion is not synonymous with decision making. Rather, the term contemplates a process of reasoning. This process must depend upon facts that are of record or that are reasonably derived by inference from the record and a conclusion based on logical rationale founded upon proper legal standards. *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512, 519 (1971). A decision which on its face demonstrates no consideration of any of the factors upon which the decision should be properly based constitutes an abuse of discretion as a matter of law. *Id.* at 277–78, 182 N.W.2d at 520.

The trial court disregarded the bright line to be determined; that is, whether the informant's testimony would be beneficial to Outlaw's case. We underline that it is the state's burden to prove that the informant's testimony would be damaging to the defendant's case, and we believe this burden can only be satisfied by a showing that the informant's testimony would not be helpful to the accused, beyond a reasonable doubt. We use that standard because of the liberty interest involved. *In re Winship,* 397 U.S. 358, 363 (1970). We also use this standard because we are dealing with the possible taking away of the right to call witnesses on the accused's behalf. U.S. CONST. amend. VI. We note that in civil actions, when there is a motion for summary judgment, the moving party must demonstrate that a trial is not necessary and must establish a record sufficient to demonstrate to the satisfaction of the court that there is no triable issue of material fact on any issue presented. *Heck & Paetow Claim Service, Inc. v. Heck,*

93 Wis. 2d 349, 356, 286 N.W.2d 831, 834 (1980). Any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against a moving party. *Id.* If this standard is necessary in summary judgment cases involving civil litigants, it is certainly all the more necessary in criminal cases where the liberty of the defendant is at stake and a finding of relevancy has already been made.

Keeping these concerns in mind, we are satisfied by our review of the *in camera* transcript that the informant's testimony might be helpful to the defendant's case. The informant was with a man identified as Outlaw for approximately ten minutes while in the dormitory. He introduced a man to agent Martine whom he had met on a previous occasion, and he was with this man at the fast-food restaurant. Yet, he is satisfied that he would not have been able to make an in-court identification of Outlaw during the trial and cannot now make a photo identification. From this evidence, it is obvious that the jury could at least draw a credible inference that the man identified as Outlaw on the day of the first sale is a different man than the one identified by Martine at trial. This is especially credible in light of the fact that Outlaw was not arrested until five months following the transaction. The informant's testimony becomes more important because it strengthens the "wrong man" defense.

We conclude that the trial court abused its discretion in focusing on whether the defendant would have been able to make effective use of the informant's statements for impeachment purposes, rather than focusing on whether the informant's testimony was damaging to the defendant's case.

A court conducting an *in camera* hearing must keep in mind the limitations that are inherent in such an examination. A trial court cannot expect to reproduce

the testimony that would ultimately result from an examination of the informant by the attorneys for the defense and prosecution. The trial judge, expected by training and temperament to maintain an attitude of neutrality, lacks both the partisan interest of and the information available to the advocates for the parties which would lead them to a much more thorough presentation of the informant's knowledge of the events. In the related context of the failure to produce prior statements of a witness, the United States Supreme Court has repeatedly warned that a court is not in a good position to determine that the defendant would not have been able to make effective use of the statements for impeachment purposes. *Goldberg v. United States*, 425 U.S. 94, 111 n. 21 (1976); *Campbell v. United States*, 373 U.S. 487, 497 n. 13 (1963); *Clancy v. United States*, 365 U.S. 312, 316 (1961); *Rosenberg v. United States*, 360 U.S. 367, 371 (1959).

Throughout the trial, the whole defense theory was to attack agent Martine's credibility and to establish that Martine had the wrong man. His credibility was subject to a certain amount of attack. At trial, he claimed that during his prior testimony at the preliminary hearing and at the *Wade-Gilbert* hearing, he simply forgot the presence of the informant, the person who actually introduced him to the man he identified as Outlaw. The questions of credibility and the weight to be given to testimony were for the jury, not the trial court, to decide. The jury deliberated for over an hour and one-half. Certainly the contest of credibility was closer than the trial court seems to suggest.

Accordingly, we conclude the trial court erred in initially finding that the state had an absolute privilege to withhold the identity of an informer and then abused

its discretion in finding that the informant's testimony would not be helpful to the accused defendant.

*By the Court.*—Judgment reversed and cause remanded for a new trial.