ANDERSON, Circuit Judge.
 

 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.
 
 See
 
 Fed. R. App. P. 34(a); 10th Cir. R. 10(e). The cause is therefore submitted without oral argument.
 

 This case is before us for the second time. The court previously affirmed defendants’ conviction for fraudulently obtaining money by false promises of loans from European banks, including the Fige-bel Bank in Belgium.
 
 [1]
 
 Defendants now appeal the district court’s denial of their subsequent motion for a new trial. The central issue is whether alleged government misconduct in failing to make available two letters and an F.B.I. report supporting the bona fides of the Figebel Bank resulted in the denial of defendants’ right to a fair trial. Defendants make a related argument that the district court erred in refusing to hold a hearing on whether the defense was, in fact, given access to those documents.
 

 The district court’s denial of defendants’ motions for a new trial may not be disturbed on appeal absent a clear abuse of discretion.
 
 United States v. Draper,
 
 762 F.2d 81 (10th Cir.1985);
 
 United States v. Ramsey,
 
 726 F.2d 601 (10th Cir.1984),
 
 cert. denied sub nom.,
 
 — U.S. —, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). We find no abuse and affirm.
 

 Facts relating to the underlying unlawful scheme and defendants’ conviction are summarized in this court’s previous opinion. We therefore turn directly to defendants’ contentions. The three documents which defendants contend were improperly withheld from them by the government are described by defendants as follows:
 

 A.
 
 Letter from First Secretary, United States Embassy, Belgium, dated March 9, 1981 (Supp. Vol. I, page 44).
 

 This letter was written to the attorney in Denver, Colorado, from the U.S. Embassy in Belgium, and contains the relevant statement that “The good news is that FIGABEL [sic] is a real, legitimate, Belgian Bank; we are not
 
 *1573
 
 dealing with a phoney organization. FIGABEL [sic] does have assets.”
 

 B.
 
 Letter from First Secretary, United States Embassy, Belgium, dated November 9,1981 (Supp. Vol. I, page 47).
 

 This letter was written to the same attorney in Denver, the attorney of alleged victim of the scheme Edward Asari, and contains the relevant statement, “FIGEBEL is continuing to function, and the [Belgium] Banking Commission assures us that it is in no danger of insolvency.” It also suggests that Mr. Asari may be able to “get his money back”.
 

 C.
 
 FBI 302 report dated February 26, 1982 (Supp. Vol. 1, pages 48-54).
 

 This report repeats the contents of a Belgium Criminal Police-Interpol report regarding Figabel [sic] Bank and Baron Della Faille titled “URGENT MATTER” and contains further information regarding Figabel, [sic] including the funding of one loan in the United States.
 

 Brief of Appellants at 3.
 

 Defendants contend that the documents “were relevant to the defense of good faith.”
 
 Id.
 
 at 5. They reason that: (a) if the bank could have been shown as legitimate, then (b) the jury could have found that the defendants “genuinely believed that themselves when they told the victims the same thing”; and (c) “if it would have been reasonable to think that the defendants believed this in ‘good faith’, then it is reasonable to think that they did not ‘misrepresent’ material facts and therefore did not willfully defraud the victims.”
 
 Id.
 
 at 6.
 

 Defendants also propose a legal standard for evaluating their contention: “evidence which might have affected in any reasonable likelihood the jury’s assessment of the credibility of witnesses, including the defendant, must have been made available. Denial of the same must result in a new trial.”
 
 Id.
 
 at 7. They cite three cases as support for that position.
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972);
 
 United States v. Butler,
 
 567 F.2d 885 (9th Cir.1978);
 
 United States v. Gerard,
 
 491 F.2d 1300 (9th Cir.1974).
 

 The “any reasonable likelihood” standard derives from one of several interpretations of the “materiality” requirement of
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In
 
 Brady,
 
 the Court held that “the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment.”
 
 Brady,
 
 373 U.S. at 87, 83 S.Ct. at 1196-97.
 

 In an opinion issued during the past year,
 
 United States v. Bagley,
 
 — U.S. —, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985),
 
 [2]
 
 the Supreme Court specifically reviewed those various standards for determining the materiality of undisclosed evidence. It held that in “no request,” “general request,” and “specific request,” cases of prosecutorial failure to disclose evidence favorable to the accused:
 

 The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A “reasonable probability” is a probability sufficient to undermine confidence in the outcome.
 

 Id.
 
 at —, 105 S.Ct at 3384.
 
 [3]
 
 The
 
 Bagley
 
 standard of materiality applies to this case notwithstanding some defense arguments
 
 *1574
 
 in the court below, not pressed on appeal, that F.B.I. Agent Castillo gave false testimony at trial and, therefore, that this case also involves an issue of perjured testimony.
 
 [4]
 
 The question then is whether the government’s nondisclosure of the documents pointing to “good news” about the Figebel Bank, and the defendants’ resultant inability to use them, undermines confidence in the outcome of the trial. The record requires a negative answer. As the district court found:
 

 The trial was conducted on an indictment which set forth fourteen paragraphs defining the misrepresentations and false pretenses which constituted the scheme. While the Figebel Bank is mentioned in those allegations, none of them relate to the ability of the Figebel Bank to fund any loans. The defendants were not involved in a scheme to represent a phony bank; they were shown beyond a reasonable doubt to be guilty of making phony representations with respect to their connection with that and other lending sources. The thrust of the scheme was to misrepresent to people in the United States that upon accompanying them to Europe, Albert Schrager would put them into contact with lending sources which would provide funds on European-type loans, not offered in the United States, and that the defendants obtained money as advance fees and expenses for these arrangements.
 

 United States v. Schrager,
 
 No. 82-CR-91 at 2 (D.Colo. July 12, 1985) (order denying motions for a new trial).
 

 The district court fairly placed defendants’ contentions in context. A claim of good faith belief in the Figebel Bank is no more than a thread in a tapestry showing that defendants falsely represented organizational ties, executed patently uncollectible promissory notes, issued purported refund checks against an account with insufficient funds, and participated in many other incriminating acts and misrepresentations. In addition, as the government has pointed out, several government witnesses and other parties testified during the trial as to the actual existence and viability of the Figebel Bank. (R. Vol. VIII at 35; R. Vol. XII at 44-45; R. Vol. XIII at 29-33; R. Vol. XVI at 28; R. Vol. XIX at 44; R. Vol. XX at 56, 85, 91; R. Vol. XXVI at 36). Thus, the information in dispute was, in fact, communicated to the jury and the court. Furthermore, such evidence could not have been used to impeach government witnesses other than Agent Castillo, since it did not contradict or undermine their trial testimony. If defendants argue the contents of the F.B.I. report or the other documents could have been used to impeach the testimony of Agent Castillo at trial, the
 
 Bagley
 
 materiality standard applies.
 
 Bagley,
 
 — U.S. at —, 105 S.Ct. at 3383.
 

 Considering the totality of the evidence, we find under
 
 Bagley
 
 that there is no reasonable probability that the documents in question would have changed the result of the proceedings. Furthermore, under the “reasonable likelihood” standard urged by defendants and applicable to cases involving perjured testimony, there is no reasonable likelihood that the judgment of the jury would have been different.
 
 [5]
 

 We also note that the disputed documents simply confirm what defendants claim they knew all along — that the Figebel Bank was legitimate. No surprise on that underlying fact is involved. If the legitimacy of the Figebel Bank was necessary to their defense of good faith, defendants
 
 *1575
 
 could easily have presented their own evidence proving that fact.
 
 “Brady
 
 does not oblige the government to provide the defendants with evidence that they could obtain from other sources by exercising reasonable diligence.”
 
 United States v. McKenzie,
 
 768 F.2d 602, 608 (5th Cir.1985),
 
 cert. denied sub nom.,
 
 — U.S. —, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986). While we do not suggest that defendants could have obtained the very documents under dispute from another source, we do believe that the information contained therein was readily available to them from other sources.
 

 It is unnecessary to discuss defendants’ contention that the district court should have held a hearing to determine whether the documents in question were made available. Nondisclosure was assumed,
 
 ar-guendo,
 
 for purposes of our analysis of the materiality issue.
 

 JUDGMENT AFFIRMED.
 

 [1]
 

 .
 
 United States of America
 
 v.
 
 Howard,
 
 751 F.2d 336 (10th Cir.1984). More specifically, the indictment alleged defendants’ participation in a scheme and artifice to defraud and obtain money or property by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1343 and § 2314 (1982).
 

 [2]
 

 . Neither counsel in this case discussed
 
 Bagley.
 

 [3]
 

 . The Court in
 
 Bagley
 
 was divided. The “reasonable probability” standard for materiality appears in Part III of Justice Blackmun’s'opinion, in which only Justice O’Connor joined. Justice White, in a separate concurrence in which he was joined by Chief Justice Burger and Justice Rehnquist, quoted the “reasonable probability” standard with approval. We therefore believe that at least a majority of the Supreme Court would apply the “reasonable probability” standard to assess materiality under
 
 Brady.
 
 Justice Blackmun further suggests that in applying this standard courts should consider the specificity of the defendant’s request for exculpatory material. Justice White’s concurrence sees no need for such an inquiry.
 

 [4]
 

 .
 
 Bagley
 
 did not change the “any reasonable likelihood” standard, as stated in
 
 United States
 
 v.
 
 Agurs,
 
 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), for cases involving perjured testimony. Even if defendants argue that the government’s case included perjured testimony, on the ground that the F.B.I. report, written by Agent Castillo, contradicted Castillo's trial testimony concerning the funding of a loan in the United States by the Figebel Bank and showed that Castillo perjured himself, we find there is no “reasonable likelihood that the false testimony could have affected the judgment of the jury."
 
 Id.
 

 [5]
 

 .
 
 See supra
 
 note 4.