STATE of Wisconsin, Plaintiff-Respondent,

v.

Mark D. LARSEN, Defendant-Appellant.

Court of Appeals

*No. 86–1793–CR. Submitted on briefs April 10, 1987.—Decided September 3, 1987.*

(Also reported in 415 N.W.2d 535.)

413

For the defendant-appellant the cause was submitted on the briefs of *Linda S. Balisle* and *Stolper, Koritzinsky, Brewster & Neider, S.C.,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. Mark Larsen appeals from an order denying his postconviction motion to set aside his conviction for armed robbery, contrary to secs. 943.32(1)(b) and (2), Stats., and two counts of injury by conduct regardless of life with use of a dangerous weapon, contrary to secs. 940.23 and 939.63(1)(a)2,

Stats.[1] The trial court sentenced him to consecutive terms of six, twelve and twelve years for the three offenses. He requests that we exercise our discretionary authority under sec. 752.35, Stats., and reverse his conviction and give him a new trial because justice has miscarried.

Larsen contends justice miscarried because (1) the pretrial photo identification and the subsequent in-court identification of him were tainted and unreliable, (2) without the tainted identification testimony, there would not have been probable cause to bind him over for trial, (3) the trial court abused its discretion in refusing to order the state to disclose the identities of two informers, (4) the state's failure to disclose the informers' identities denied him his due process right to disclosure of all exculpatory materials, and (5) the state's failure to provide him with a written summary of his oral statement to his cellmate as required by sec. 971.23(1), Stats., denied him a fair and just trial. Finally, Larsen claims that the trial court abused its discretion when it ordered his sentences to run consecutively.

We conclude that we may not exercise our discretionary reversal authority under sec. 752.35, Stats., because our review of the record does not convince us that Larsen should not have been found guilty and that justice demands he be given a new trial. We conclude however that the trial court abused its discretion in failing to explain why it found that there is no reasonable probability that the state's informers could give testimony necessary to a fair determination of the issue of guilt or innocence of Larsen, as required by sec. 905.10(3)(b), Stats. We therefore reverse the

---

[1]Larsen did not appeal from the judgment of conviction.

trial court's order and direct the court to reconsider Larsen's motion to compel the state to disclose the identities of the informers.

## I.

## BACKGROUND OF THE CASE

This case arises out of a robbery of a Rocky Rococo restaurant during the course of which two employees were severely beaten. By developing information obtained from informers, the police arrested four persons: Lisa Grasshold, Kelly Miess, Elizabeth Cirves and Larsen. At the preliminary hearing the two employees were not able to identify Larsen as participating in the robbery. One of his alleged accomplices could not identify him. However, he was identified by another accomplice, Elizabeth Cirves, as a participant in the robbery and was bound over for trial. The trial court denied Larsen's motion to compel the state to disclose the names of its informers.

During the course of its investigation the state took the statement of Larsen's cellmate which included a narrative of conversations Larsen allegedly had with him and other prisoners discussing the crime and ways to establish an alibi. The state did not provide a copy of that statement in response to Larsen's demand for disclosure of material pursuant to sec. 971.23(1), Stats. However, when Larsen filed his notice of alibi on January 11, 1985, the state on January 18 provided Larsen with a list of alibi rebuttal witnesses, including Larsen's cellmate and attached a copy of his cellmate's statement.

We first consider Larsen's claims that the trial court abused its discretion in denying his motion to compel the state to disclose the informers' identities and that the state's failure to disclose their identities

denied him his due process right to disclosure of all exculpatory material.

## II.

## DISCLOSURE OF INFORMERS' IDENTITIES

The state claimed the privilege under sec. 905.10(1), Stats.,[2] to refuse to disclose the identities of two informers who had furnished information about the crime to the investigating officers. Larsen moved the trial court for an order under sec. 905.10(3)(b),[3] to

[2]Section 905.10(1), Stats., provides:

The federal government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

[3]Section 905.10(3)(b), Stats., provides:

If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case or of a material issue on the merits in a civil case to which the federal government or a state or subdivision thereof is a party, and the federal government or a state or subdivision thereof invokes the privilege, the judge shall give the federal government or a state or subdivision thereof an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits but the judge may direct that testimony be taken if he finds that the matter cannot be resolved satisfactorily upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the federal government or a state or subdivision thereof elects not to disclose his identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on his own motion. In civil cases, he may make an order that justice requires. Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event

require the disclosure. The trial court conducted an *in camera* review of the materials presented by the state and denied his motion. However, the court did not explain how it reached its conclusion that Larsen's motion should be denied.

In reviewing the trial court's conclusion following an *in camera* review under sec. 905.10(3)(b), Stats., we determine whether the trial court abused its discretion. *State v. Outlaw,* 104 Wis. 2d 231, 243–44, 311 N.W.2d 235, 241 (Ct. App. 1981), *aff'd,* 108 Wis. 2d 112, 321 N.W.2d 145 (1982).

> Discretion is not synonymous with decision making. Rather, the term contemplates a process of reasoning. This process must depend upon facts that are of record or that are reasonably derived by inference from the record and a conclusion based on logical rationale founded upon proper legal standards. A decision which on its face demonstrates no consideration of any of the factors upon which the decision should be properly based constitutes an abuse of discretion as a matter of law. [Citation omitted.]

*Id.,* 104 Wis. 2d at 244, 311 N.W.2d at 241.

The trial court stated in its memorandum decision: "I do not consider that there is a reasonable probability that the testimony of either informer

of an appeal, and the contents shall not otherwise be revealed without consent of the federal government, state or subdivision thereof. All counsel and parties shall be permitted to be present at every stage of proceedings under this subdivision except a showing in camera at which no counsel or party shall be permitted to be present.

would be able to give testimony necessary to a fair determination of guilt or innocence." Section 905.10(3), Stats., requires more than decisionmaking. Because the trial court failed to show that its conclusion was reached by a reasoning process based on the facts of record or reasonable inferences from those facts, the court abused its discretion when it denied Larsen's motion. *State v. Johnson,* 118 Wis. 2d 472, 480–81, 348 N.W.2d 196, 200–01 (Ct. App. 1984). We conclude this is not an appropriate case for us to review the record to determine whether there are sufficient facts of record to support the trial court's decision had discretion been exercised on the basis of those facts. *Id.* at 481, 348 N.W.2d at 201. On remand, the trial court may require the state to provide more information and may order an *in camera* hearing.

Larsen also contends that the state violated his right to the due process of the law when it refused to disclose the names of the informers. He claims that the state must provide him with all exculpatory material in its possession and that the source of that right is his right to a fair trial guaranteed by the fifth and fourteenth amendments to the United States Constitution. *Matter of State ex rel. Lynch v. County Ct.,* 82 Wis. 2d 454, 465, 262 N.W.2d 773, 778 (1978). The right of a defendant to the testimony of an informer when that testimony is necessary to a fair determination of his or her guilt or innocence in a criminal case is not, however, founded on the federal constitution. Section 905.10, Stats., is a codification of a common law evidentiary privilege, *see* 8 Wigmore, *Evidence,* sec. 2374, p. 761 n. 1 (McNaughton rev. 1961), "built in part upon pre-existing Wisconsin precedent." *Outlaw,* 108 Wis. 2d at 121, 321 N.W.2d at 151.

The privilege is based on public policy. *Stelloh v. Liban,* 21 Wis. 2d 119, 125, 124 N.W.2d 101, 104 (1963); *Roviaro v. United States,* 353 U.S. 53, 59 (1957). In *McCray v. Illinois,* 386 U.S. 300, 309 (1967), the Supreme Court explained that in *Roviaro* it had defined the scope to be accorded to one aspect of the common law evidentiary informer's privilege. The court stated: "This is a task which is quite different, of course, from the responsibility of constitutional adjudication." *McCray* at 309. While the Court indicated that the informer's privilege should be more closely circumscribed on trial than at the preliminary hearing, the Court stated it has been unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials. *Id.* at 311.

In *McCray,* the Court found no support in the fourteenth amendment's right of due process or the sixth amendment's right of confrontation for the proposition that the constitution requires disclosure of an informer's identity in preliminary hearings where the arrest or search was made in reliance upon facts supplied by an informer. *Id.,* 386 U.S. at 313. While the privilege must give way at trial when the informer's identity is essential to a fair determination of the cause, *Roviaro,* 353 U.S. at 60–61, this is not a requirement of the federal constitution but a court-imposed limitation upon the privilege. Since *Roviaro,* the federal courts have consistently held that the defendant has no absolute constitutional right to disclosure of the identity of an informer. Library of Congress Congressional Research Service, *Current Law of Privileges in Federal Courts,* Supp. to Hearings on Proposed Rules of Evidence Before the Subcommit-

tee on Criminal Justice of the House Comm. on the Judiciary, 93rd Cong., 1st Sess., at 318–27 (1973) (footnotes deleted), *reprinted in* Saltzburg and Redden, *Federal Rules of Evidence Manual,* p. 345 (4th ed. 1986). These principles are equally applicable to state criminal trials. We conclude that the informer's privilege contained in sec. 905.10(1), Stats., is based on a common law public policy codified by statute and not upon the federal constitution. We therefore reject Larsen's claim that the state was required to disclose the identity of the informers under its constitutional obligation to disclose exculpatory material to a defendant in a criminal case.

Because our disposition of this part of Larsen's appeal does not assure him a new trial or resentencing, we review his further contentions to determine whether we should exercise our discretionary reversal authority or should set aside his sentence. We first consider in this review Larsen's contention that we should reverse his conviction because justice has miscarried.

## III.

### DISCRETIONARY REVERSAL

Section 752.35, Stats., gives us discretionary authority to reverse the judgment or order appealed from and order a new trial "if it appears from the record ... that it is probable that justice has for any reason miscarried."[4] It "has become a firm fixture in

---

[4]Section 752.35, Stats., provides:

In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of

422

Wisconsin criminal law" that "'[i]n order for this court to exercise its discretion and for such a probability to exist we would at least have to be convinced that *the defendant should not have been found guilty* and that justice demands that the defendant be given another trial.' (Emphasis added.)" *State v. Wyss,* Wis. 2d 681, 736, 370 N.W.2d 745, 771 (1985), quoting *Lock v. State,* 31 Wis. 2d 110, 118, 142 N.W.2d 183, 187 (1966). In *Wyss,* 124 Wis. 2d at 741, 370 N.W.2d at 773, the supreme court held that we erred in exercising our discretion to reverse in the interests of justice without determining to a substantial degree of probability that a new trial would have produced a different result. We therefore review Larsen's contentions and the record to determine whether we may be convinced that Larsen should not have been found guilty and that there is a substantial probability that a new trial would produce a different result.

## IV.

## IDENTIFICATION

Larsen contends that the pretrial identification techniques irreparably tainted the identification testimony. The identification procedure consisted of a single photograph and a one-person lineup. The witness who identified Larsen at the preliminary hearing was Elizabeth Cirves, who put together the operation.

whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

She recruited Larsen to assist her and, although she did not know his last name, she knew him by sight from the occasions on which she had met Larsen and recruited him. There was no need for a lineup or photo array in order for her to identify Larsen as a participant in the robbery. She was there with him and identified him by name before being shown his photograph. Cirves' pretrial identification was not tainted. Consequently, her trial identification was free from prejudice.

At trial both Cirves and Lisa Grasshold identified Larsen. Grasshold had known Larsen for two years prior to the robbery. She positively identified Larsen as her co-participant in the robbery.

Larsen's arguments are based upon cases involving a victim's identification of someone who has committed an offense against the victim. These cases have no application to the case before us. We therefore reject Larsen's contention that the identification of him as a participant in the armed robbery was tainted.

Our determination of the identification issue disposes of Larsen's contention that the trial court did not have probable cause to bind him over for trial.

## V.

### LARSEN'S STATEMENTS

We next consider Larsen's contention that the state's failure to comply with sec. 971.23(1), Stats., denied him a fair and just trial. Section 971.23(1) provides:

> Upon demand, the district attorney shall permit the defendant within a reasonable time before trial to inspect and copy or photograph any written or recorded statement concerning the alleged crime

made by the defendant which is within the possession, custody or control of the state .... Upon demand, the district attorney shall furnish the defendant with a written summary of all oral statements of the defendant which he plans to use in the course of the trial. The names of witnesses to the written and oral statements which the state plans to use in the course of the trial shall also be furnished.

The state had in its possession for some time prior to trial a written statement of Larsen's cellmate recounting numerous statements Larsen made about concocting an alibi defense to the armed robbery charge. The state did not give Larsen a copy of this statement until a week before trial. The district attorney explained that he did not intend to use the cellmate's statement until Larsen filed his notice of alibi. We conclude that sec. 971.23(1), Stats., did not require the district attorney to permit Larsen to inspect and copy or photograph the written statement of Larsen's cellmate which was in his possession or provide him with a written summary of Larsen's oral statements made to his cellmate prior to the time the district attorney concluded he would introduce Larsen's statements at the time of trial. There is no suggestion that the state always intended to use the cellmate's statement but, as a stratagem, waited until the last minute to notify Larsen of the existence of the statement and its intent to use it.

Our review of the record and Larsen's contentions does not convince us he should not have been convicted and that justice demands that he be given a new trial. We conclude we cannot exercise our discretion-

ary authority under sec. 752.35, Stats., to reverse Larsen's conviction because justice miscarried.

## VI.

## ABUSE OF SENTENCING DISCRETION

Larsen contends that the trial court abused its discretion by sentencing him to an excessive sentence. In particular, he contends that the court abused its discretion in imposing sentences to be served consecutively for a single incident which lasted fifteen minutes.

"Sentencing is left to the discretion of the trial court, and appellate review is limited to determining whether there was an abuse of discretion." *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633, 638 (1984). There is a strong public policy against interference with the sentencing discretion of the trial court and there is a presumption that the trial court acted reasonably. *Id.* The test for determining whether a sentence constitutes cruel and unusual punishment is whether the sentence is "so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." *Steeno v. State,* 85 Wis. 2d 663, 669, 271 N.W.2d 396, 399 (1978).

In *Harris,* 119 Wis. 2d at 623–24, 350 N.W.2d at 639 the court·summarized the factors a trial court may consider when sentencing a defendant: defendant's criminal record; history of undesirable behavior patterns; personality, character and social traits; results of a presentence investigation; vicious or aggravated nature of the crime; degree of culpability;

demeanor at trial; age, educational background and employment record; remorse, repentance and cooperativeness; need for close rehabilitative control; rights of the public; and length of pretrial detention. The primary factors are the gravity of the offense, the character of the offender, and the need for protection of the public. *Id.* at 623, 350 N.W.2d at 639.

A trial judge has discretion to determine whether sentences imposed in cases of multiple convictions are to run concurrently or consecutively, using the same factors that apply in determining the length of a single sentence. *State v. Curbello-Rodriguez,* 119 Wis. 2d 414, 436, 351 N.W.2d 758, 769 (Ct. App. 1984).

The record of the sentencing hearing reveals that the trial judge considered the presentence report, the memorandum submitted by Larsen's attorney, and his impressions gained from the trial itself. The trial judge stated he had considered the age of the defendant, his personality, character and other social factors. He candidly observed that he did not find Larsen's personality and character to be consistent with a person who goes around hitting people in the head with hammers. He stated that what the case "comes down to, is the nature of the offense." He observed that it was a useless act but could not agree with Larsen that it was a youthful act which should be considered to be free of any malice. The judge stated that the act of hitting two prone persons in the head with a hammer, taking a full body swing, four to eight times to be a terribly cruel act—"terribly uncompassionate and inhumane." The judge characterized the conduct as "demonstrating an utter lack of concern" for the lives of the victims. The judge found in Larsen's act extreme cruelty or depravity. The judge

stated there was a public interest as expressed by the will of the people through the legislature, that these types of offenses are so serious that to do anything less than impose a substantial prison sentence would "so unduly depreciate those offenses as to be contrary to the public interest." The judge found that Larsen's rehabilitative needs required addressing in a situation of confinement.

An abuse of discretion might be found if the trial court failed to state on the record the material factors which influenced its decision or if it gave too much weight to one factor in the face of other contravening considerations. *State v. Krueger,* 119 Wis. 2d 327, 337–38, 351 N.W.2d 738, 744 (Ct. App. 1984). The weight to be given to each of the factors which influence its decision is particularly within the discretion of the trial court. *Id.* at 338, 351 N.W.2d at 744. Here, the trial court gave great weight to the nature of the offense. We conclude that was not an abuse of its discretion. The medical witness testified that each victim had silver-dollar size holes in their skulls that resulted from being struck in the head with a hammer between four and eight times with sufficient force to drive pieces of the skull into their brains. As indicated by the trial court, these cruel and senseless acts inflicted upon helpless persons indicate a disregard for human life. The trial court was justified in the weight it gave to this factor in sentencing Larsen. We conclude that the trial court articulated the basis for the sentences imposed and did not abuse its discretion.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.

428

DYKMAN, J. (*concurring*). The majority concludes that because the informer's privilege contained in sec. 905.10(1), Stats., is a common law doctrine, Larsen has no constitutional right to the identity of the informers. I do not join in this conclusion. The majority either implies that sec. 905.10(1) takes precedence over the fourteenth amendment to the United States Constitution or it ignores Larsen's argument that notwithstanding sec. 905.10(1), he has a fourteenth amendment right to a new trial if the state fails to provide him with material exculpatory evidence in its possession.

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that as a matter of federal due process, the state may not suppress material evidence favorable to the accused upon his request for that evidence. *United States v. Bagley*, 473 U.S. 667 (1985), re-affirmed the *Brady* rule, but emphasized the *Brady* requirement that the evidence be material.

The *Brady* holding has been applied to a broad list of exculpatory material, such as FBI interviews with potential witnesses, *United States v. Brimberry,* 803 F.2d 908, 913 (7th Cir. 1986) *cert. denied,* 107 S. Ct. 1977 (1987); statements of a co-conspirator, *United States v. Driver,* 798 F.2d 248, 250 (7th Cir. 1986); statements of an FBI informant, *United States v. Kelly,* 790 F.2d 130, 135 (D.C. Cir. 1986); ballistic tests, *United States v. Peltier,* 800 F.2d 772, 774 (8th Cir. 1986); payments to informants, *Bagley v. Lumpkin,* 798 F.2d 1297, 1299 (9th Cir. 1986) (decision on remand from *United States v. Bagley,* 473 U.S. 667 (1985)); letters from a U.S. embassy, *United States v. Kluger,* 794 F.2d 1579, 1580 (10th Cir. 1986); knowledge that a person other than defendant was considered a primary suspect, *Bowen v. Maynard,* 799 F.2d

593, 596 (10th Cir.) *cert. denied,* 107 S. Ct. 458–59 (1986); a report of a coast guard officer, *United States v. Severdija,* 790 F.2d 1556, 1559 (11th Cir. 1986); and information that the state's chief witness had been given immunity or thought he had been given immunity, *Moore v. Kemp,* 809 F.2d 702, 719 (11th Cir.) *cert. denied,* 107 S. Ct. 2192 (1987).

There is no exception to the *Brady* rule to the effect that a state statute such as sec. 905.10(1), Stats., permits the state to suppress evidence obtained from an informant. I would direct the trial court to consider Larsen's fourteenth amendment due process claim as well as his sec. 905.10(3)(b) claim.