STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

John C. OUTLAW, Defendant-Appellant.

Supreme Court

*No. 80–1727–CR. Argued April 28, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 145.)

For the plaintiff-petitioner the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Glenn L. Cushing,* assistant state public defender.

HEFFERNAN, J. This is a review of the court of appeals decision[1] which reversed the judgment of the circuit court for Winnebago county, WILLIAM H. CARVER, Circuit Judge. The issue in the case concerns the respective obligations of the state and a defendant in circumstances where the informer privilege, sec. 905.10 (1), Stats., is invoked by the state and the defendant proceeds under the provisions of sec. 905.10(3)(b).[2]

---

[1] *State v. Outlaw,* 104 Wis. 2d 231, 311 N.W.2d 235 (Ct. App. 1981).

[2] "905.10 **Identity of informer.** (1) RULE OF PRIVILEGE. The federal government or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

"(2) WHO MAY CLAIM. The privilege may be claimed by an appropriate representative of the federal government, regardless of whether the information was furnished to an officer of the government or of a state or subdivision thereof. The privilege may be claimed by an appropriate representative of a state or subdivision if the information was furnished to an officer thereof.

"(3) EXCEPTIONS. (a) *Voluntary disclosure; informer a witness.* No privilege exists under this rule if the identity of the informer or his interest in the subject matter of his communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness for the federal government or a state or subdivision thereof.

"(b) *Testimony on merits.* If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the

More specifically, the state, the petitioner on this review, asserts that the court of appeals erred when it held that, when the *in camera* procedure authorized by sec. 905.10

issue of guilt or innocence in a criminal case or of a material issue on the merits in a civil case to which the federal government or a state or subdivision thereof is a party, and the federal government or a state or subdivision thereof invokes the privilege, the judge shall give the federal government or a state or subdivision thereof an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits but the judge may direct that testimony be taken if he finds that the matter cannot be resolved satisfactorily upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the federal government or a state or subdivision thereof elects not to disclose his identity, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on his own motion. In civil cases, he may make an order that justice requires. Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the federal government, state or subdivision thereof. All counsel and parties shall be permitted to be present at every stage of proceedings under this subdivision except a showing in camera at which no counsel or party shall be permitted to be present.

"(c) *Legality of obtaining evidence.* If information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, he may require the identity of the informer to be disclosed. The judge shall on request of the federal government, state or subdivision thereof, direct that the disclosure be made in camera. All counsel and parties concerned with the issue of legality shall be permitted to be present at every stage of proceedings under this subdivision except a disclosure in camera at which no counsel or party shall be permitted to be present. If disclosure of the identity of the informer is made in camera, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the appropriate federal government, state or subdivision thereof."

is conducted following defendant's initial showing, the state must forego its informer's privilege or submit to a dismissal unless it can show "beyond a reasonable doubt" that the informer's testimony will not be helpful to the defense. We agree that the court of appeals erred when it imposed that burden upon the state, but because we conclude that the trial court abused its discretion in exercising its powers under sec. 905.10(3), we affirm the holding of the court of appeals reversing the conviction and remanding to the circuit court.

The underlying material facts reveal that on March 22, 1979, a criminal complaint was issued charging the defendant, John C. Outlaw, with three counts of delivery of cocaine five months earlier to a state undercover agent, Gary Martine, contrary to sec. 161.16(4), Stats. The offenses allegedly took place on October 10, 19, and 25, 1978, on the campus of the University of Wisconsin-Oshkosh.

With respect to the October 10 transaction, the complaint stated that *three* people—Outlaw, Anthony L. McCalla, and Agent Martine—were present in the dormitory room where the drug transaction was discussed. Outlaw and Martine left the room, further discussed the transaction in the men's washroom, and completed the transaction in the hall just outside that room.

At the preliminary hearing held on October 16, 1979, Agent Martine testified that there were *four* people present in the dormitory room just prior to the October 10 transaction—himself, Outlaw, McCalla, and Cle Gray. He testified that he met the three in the parking lot of a fast-food restaurant and a short time later met them at the dormitory. He said that he had known both McCalla and Gray prior to this meeting but that he had never before met the defendant, who he later said was Outlaw. At a *Wade-Gilbert* hearing on March 7, 1980, Martine again testified that *four* people were present in the dormitory room just before the transaction.

Trial to a jury was held on March 17 and 18, 1980; and, during the direct examination of Agent Martine regarding the October 10 transaction, he testified that *five* people were present in the dormitory room just prior to the transaction. He further testified that, shortly after he left the dormitory on that date and entered his car, the defendant came from the dormitory, walked over to his car, and handed him another packet of cocaine, explaining that he had thought the previous packet he had given him had contained two grams when it contained only one.

On cross-examination Martine admitted that he had failed previously to mention the presence of the fifth person but testified that, other than in the complaint, this failure was unintentional. Defense counsel established that the fifth person was an informer who had accompanied Agent Martine to the restaurant and then to the dormitory. Martine further said that the informer was present in the dormitory room during the discussion of the transaction and was in a position to hear the entire conversation in that room and to see what was going on.

Finally, Agent Martine said that the informer was present in Martine's car when the second packet of cocaine and the explanation for its delivery were given to Martine.

During the cross-examination, defense counsel specifically asked the name of the informer, but the state objected, claiming a law enforcement privilege pursuant to sec. 905.10(1), Stats., *Identity of informer*. The trial court sustained the objection.

At the close of Agent Martine's testimony, defense counsel, relying on sec. 905.10(3)(b), Stats., moved to dismiss the count relating to the October 10 transaction or, in the alternative, to require disclosure of the informer's identity. The state opposed the motion, arguing that

the right to seek such relief had been waived because defense counsel had known prior to trial that a fifth person was present. Defense counsel admitted that, one week prior to the trial, he had received a report stating there was another person[3] present, but counsel argued that he had expected the state to call all relevant witnesses and had only found out the morning of trial that an informer would not be called. The court denied the motion, stating that:

"[T]he statute here put into the law by the legislature has provided this apparent protection of not disclosing the informer . . . and if they choose to leave out witnesses that could lend more information here, I guess that's their privilege . . . ."

At the close of the state's case, defense counsel renewed his motion to require disclosure or to dismiss Count 1, and again the trial court denied the motion.

The defense then called Anthony McCalla and Cle Gray to testify, but both refused, claiming their fifth amendment privilege. With respect to McCalla, because it was ultimately determined that he could not claim the privilege of the fifth amendment, he was ordered by the court to testify; but he still refused, despite being held in contempt by the court. Gray's invocation of the fifth amendment privilege was upheld. The state refused to consent to a grant of immunity for either McCalla or Gray as requested by defense counsel. Hence, only the state's agent, Martine, and the defendant, by waiving his right not to testify, were able to testify in respect to the alleged transaction of October 10.

The defendant took the stand and testified that he was not the person involved in any of the transactions. His two sisters also testified, disputing Agent Martine's de-

---

[3] The Court of Appeals pointed out that, although defendant knew there was a fifth person, he did not know that the fifth person was an informer until trial.

scription of Outlaw's hair as being "straight" during the period of time in question. They testified that at the time his hair style was "Afro." Outlaw's defense was alibi and mistaken identity.

At the close of the evidence, defense counsel reiterated his motion to dismiss Count 1, because of the state's refusal to disclose the informer's identity. The state again argued that the motion was untimely, and the trial court again denied the motion.

The jury found Outlaw guilty of all three counts. He appealed, arguing to the Court of Appeals that the informer's privilege found in sec. 905.10, Stats., was not so absolute as the trial court had construed it and asserting that the trial court, given the facts and circumstances of this case, had erred in refusing to require the disclosure of the informer's identity. He argued that all three counts should be dismissed if the state persisted in its refusal to disclose. He reasoned that the defendant's identity was in issue as to all three counts and that, if the informer's testimony discredited Agent Martine's identification as to the first count, then Martine's entire testimony would be suspect.

The court of appeals, in reliance on *Roviaro v. United States*, 353 U.S. 53 (1957), on the initial submission of the appeal, construed sec. 905.10, Stats., to require disclosure only if the informer's testimony was found to be relevant and helpful to the defense. It concluded from the record that the informer was a transactional witness whose testimony might be relevant to all three counts; but without knowledge of the substance of that testimony, the court of appeals could not conclude that the informer's testimony would be helpful. Consequently, it retained jurisdiction of the case but remanded to the trial court for the hearing contemplated by sec. 905.-10(3)(b).

The court of appeals instructed the state to supply affidavits to the trial court or, if the trial court directed a hearing *in camera,* to produce testimony to determine whether the informer's testimony might be relevant and helpful to the defense. The affidavits or testimony were ordered to be sealed and returned to the court of appeals, along with the trial court's finding whether or not there was a reasonable probability that the informer could give testimony helpful to the defense. The finding of the trial court was directed not to be sealed, and copies were to be sent to the parties.

The circuit court on remand allowed the state the opportunity to produce its informer in an *in camera* hearing. Following that hearing, the trial judge made findings and concluded from the *in camera* testimony that the informer's "testimony at trial would, with reasonable probability, not be helpful to the Defense." The trial judge further concluded that the informer's testimony would corroborate other evidence that an unlawful drug transaction had taken place and stated that:

"Although [the informer] could not have identified John Outlaw, the issue of identity was so convincingly presented by Agent Martine that [the informer's] testimony would not, *when reviewed* in total, be helpful to the defendant." (Emphasis supplied.)

Upon submission of the return to the court of appeals, that court disagreed with the conclusions of the trial court, stating that the trial court had employed a much too limited view of the circumstances in which fundamental fairness and the evidentiary rule required disclosure. The court of appeals held that, in the *in camera* proceeding, the state had the burden of proving beyond a reasonable doubt that the informer's testimony would not be helpful to the defense; and, from its review of the *in camera* testimony, the court of appeals concluded that that burden had not been met. The judgment of convic-

tion on all three counts was reversed, and the cause was remanded for a new trial.

The state then petitioned this court for review of the court of appeals decision. While the state disagreed with the court of appeals mandate on the merits requiring reversal of the conviction, its principal reason for urging that we review the court of appeals decision was that the court of appeals had made a serious error in defining the state's responsibility in a sec. 905.10, Stats., procedure. It argued vehemently that the court of appeals erred when it placed the burden on the state to demonstrate beyond a reasonable doubt that an informer's testimony would not be helpful to the defendant.

Ordinarily, we would not have reviewed a court of appeals decision in a criminal case where only a question of the proper exercise of trial judge discretion was involved. Here, however, the state attacks the burden of proof which the court of appeals has imposed upon it. It is because of this latter alleged error we accepted review. In reviewing the court of appeals decision, we also review other aspects of the application of sec. 905.10, Stats. The burden of proof to be assumed by the parties under sec. 905.10 (3) (b) proceedings is clearly a matter of statewide importance and would have an effect on numerous criminal, and some civil, cases in the future.

The relevant rule identified as such by all the parties is sec. 905.10, Stats., of the Wisconsin Rules of Evidence. This rule in respect to the identity of an informer was adopted by this court effective January 1, 1974. While the Judicial Council Committee notes published with the order rely upon previously decided cases and texts, the Wisconsin rule is distinctly a product of Wisconsin Supreme Court rule making. Authorities referred to by the Committee may be persuasive, but because rules of evidence, to the extent that they do not impinge upon United States constitutional guarantees, are a matter of state

law, federal authorities are not of controlling predenetial significance. *See,* Leflar, *American Conflicts Law* (Bobbs Merrill 1968), p. 123.

The evidentiary rule that controls is sec. 905.10, Stats. The rule recognizes the state's privilege in respect to informers and recognizes the reality that informers are an important aspect of law enforcement and that the anonymity of informers is necessary for their effective use. The framers of the rule built in part upon pre-existing Wisconsin precedent. *See, Stelloh v. Liban,* 21 Wis. 2d 119, 126, 124 N.W.2d 101 (1963). That case, relying upon Wigmore, emphasized that the privilege was not absolute and has limitations.

"[T]he court may compel disclosure 'if it appears necessary in order to avoid the risk of false testimony or in order to secure useful testimony,' Wigmore, Evidence . . . page 768, or if the disclosure 'is useful evidence to vindicate the innocence of the accused or lessen the risk of false testimony or is essential to the proper disposition of the case.' *Wilson v. United States* (1932), 59 Fed. (2d) 390, 392."

Although sec. 905.10(3)(b), Stats., is a Wisconsin rule and is grounded on Wisconsin precedent, it is consistent with the reasoning of the principal United States case, *Roviaro v. United States,* 353 U.S. 53 (1957). That case voices the position echoed in the comments of the Wisconsin Judicial Council Committee which formulated our evidentiary rules. The Committee stated:

"The informer privilege . . . may not be used in a criminal prosecution to suppress the identity of a witness when the public interest in protecting the flow of information is outweighed by the individual's right to prepare his defense." 59 Wis. 2d R149.

*Roviaro,* however, did not set up a mechanism for determining when an accused's right to a fair trial was infringed by the prosecution's assertion of the informer

privilege. It was clear to the United States Supreme Court, however, that the successful assertion of the informer's privilege in that case would deprive Roviaro of evidence material to his defense. Because sec. 905.10 implements the basic *Roviaro* philosophy, we allude to the facts and language of that case.

Roviaro was suspected of the sale and transportation of heroin. In *Roviaro*, the informer was the purchaser of the narcotics. On the night of the purchase, with the knowledge and consent of the informer, John Doe, a police officer concealed himself in the trunk of John Doe's automobile shortly before a delivery of narcotics was to be made by defendant to John Doe. The police officer overheard the conversation between Doe and the defendant, and when the vehicle stopped for the purpose of making the delivery, he was able to see the defendant pick up a package from a tree and place it in Doe's automobile. This same episode was also viewed by an officer in a tailing vehicle.

The defendant demanded the production of Doe as a witness. This disclosure was refused by the government, and the trial court upheld the government's assertion of the common law informer privilege. The defendant was found guilty by the trial court, which sat as trier of the facts. The conviction was upheld by the United States Court of Appeals, because, it concluded, the trial court had not abused its discretion in denying defendant's request.

The United States Supreme Court reversed. It stated that, whatever the reasons for the recognition of the informer's privilege:

"[There was a] limitation on the applicability of the privilege [that] arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, *or* is essential to a fair determination of a cause, the privilege *must* give way. In these situations the trial

court may require disclosure and, if the Government withholds the information, dismiss the action." (Emphasis supplied.) P. 60.

The Court nevertheless concluded that no fixed rule was justifiable.

"The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." P. 62.

Using this methodology, the Court proceeded to the consideration of the case at hand and concluded that the circumstances of the case demonstrated that:

"[The informer's] possible testimony was highly relevant and might have been helpful to the defense. . . . His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.

"Finally, the Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. The only person, other than petitioner himself, who could controvert, explain or amplify Bryson's report of this important conversation was John Doe. Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show an entrapment.

"This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a

position to amplify or contradict the testimony of government witnesses." Pp. 63–64.

The Court concluded that failure to require disclosure in the case was prejudicial error and reversed the conviction.

Despite the fact that *Roviaro* was decided twenty-five years ago, it appears to be the only United States Supreme Court case dealing with the right of a defendant to compel the disclosure of the identity of an informer for trial. Other United States Supreme Court cases have dealt with the right of defendants to compel disclosure at suppression hearings regarding the legality of searches. *See, Rugendorf v. United States,* 376 U.S. 528 (1964), and *McCray v. Illinois,* 386 U.S. 300 (1967).

It is apparent, however, that the balancing philosophy of *Roviaro* is reflected in the informer's privilege rule of the Wisconsin Rules of Evidence, 905.10, which recognizes the privilege in 905.10(1) and (2), but spells out the limitations in 905.10(3). Rule 905.10(3)(a) essentially provides that, where the "communication has been disclosed to those who would have cause to resent the communication," and the disclosure is by either the government or the informer, the privilege is lost. Rule 905.10(3)(c) is concerned with the informer's privilege as it pertains to the legality of searches and seizures and provides for an *in camera* disclosure of the informer and testimony where the trial judge deems it necessary to insure such legality.

Rule 905.10(3)(b), *Testimony on merits,* pertinent to this case, is concerned with the possibility that an informer has material evidence necessary to a fair trial. It, too, like 905.10(3)(c), provides for an *in camera* proceeding to avoid a "judicial guessing game." *United States v. Day,* 384 F.2d 464, 470 (3rd Cir. 1967) ; *see,* also, *United States v. Skeens,* 449 F.2d 1066 (D.C. Cir. 1971, Bazelon dissenting), as to when an *in camera* showing might be

necessary to ascertain whether or not the informer participated or merely overheard a conversation about a crime.

The procedure for an *in camera* hearing is triggered by:

". . . evidence in the case or from other showing by a party that an informer *may* be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case." (Emphasis supplied.) Sec. 905.10(3) (b).

This portion of the rule does not place a significant burden upon the party seeking disclosure. There need only be a "showing . . . that an informer may be able to give testimony necessary" to a fair trial. In the instant case, the factual issues are alibi and identity. The defendant claimed he was the wrong man and that he was elsewhere at the time. Any testimony that bore upon these aspects of the defendant's case was possibly relevant and material. Martine's own testimony placed the informer in a room with the defendant, where he could hear and see all that went on. The informer had arranged the introduction of the alleged criminals to the agent and admittedly was in a position to see the drug trafficker when he delivered the additional packet of cocaine to the agent at the car. It can hardly be contended that there was not sufficient initial showing by the defendant that the informer might be able to give identification testimony necessary to a fair determination of guilt or innocence.

The informer was, it is to be assumed, the eyes and ears of the narcotic agents. Thus, once it was known that there was an informer present during the transaction, it was appropriate for counsel to assert that the informer's testimony might be necessary for a fair determination of the guilt or innocence of the accused and to ask for disclosure of informer's identity. This is a

minimal burden on a defendant. As we understand the position of the attorney general, he recognizes that the burden of showing that "an informer *may* be able to give testimony necessary . . ." (emphasis supplied) to a fair trial is light indeed.

The showing need only be one of a possibility that the informer could supply testimony necessary to a fair determination. That showing has been made here.

Under the rule, once that showing is made, it behooves the state to either disclose the identity of the informer or avail itself of the opportunity to offer proof of what in actuality the informer can testify about.

"[T]he judge shall give the . . . state . . . an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony [necessary to a fair determination of guilt or innocence]." Sec. 905.10(3)(b).

This is the opportunity for the state to show that the informer cannot give testimony necessary to "a fair determination" of the guilt or innocence of the defendant. If it foregoes this opportunity, the judge, on the basis of the preliminary showing, can order disclosure and, in the absence of disclosure of the informer's identity, dismiss the case.

If the state avails itself of the opportunity to show that the informer cannot give testimony necessary for the fair trial of the defendant, it may do so by affidavits or testimony. The fact that affidavits are permitted for this purpose demonstrates that the trial judge's role is limited to the relevancy and admissibility of the testimony. Credibility, except as a matter of law, is not to be determined on the basis of affidavits. Credibility may be assumed, but only for the purpose of testing relevancy and admissibility. To make a more extensive inquiry into credibility at this stage of the proceedings

would usurp the function of the jury. *See,* 59 Wis. 2d R158.

Where the showing of the state is by affidavit or *in camera* testimony, the question for the judge is whether there is a "reasonable probability" that the informer can give the testimony necessary to a fair determination. There need not be proof positive, but there must be a showing that exceeds the standard of possibility initially put on the defendant that the informer "may be able to give testimony necessary to a fair determination of the issue of guilt or innocence . . . ."

Where the judge directs that testimony be taken, there can be proof positive of what an informer will say.[4] As we view the procedure, the only burden on the state is to go forward with its showing—*i.e.* if it does not wish to disclose the informer or dismiss its case, it must show by affidavits (or *in camera* at the direction of the judge) what the informer will say if called upon to testify. This testimony is in respect to matters which may be relevant to either guilt or innocence of—the accused. No burden beyond the mere going forward with such evidence is placed upon the state. There is nothing in the rule or in the realm of reason that requires more of the state at this juncture. The state must show what the testimony would be, but it is not required to do more. There is no requirement that the state show beyond a reasonable doubt that the informer's testimony would not be helpful to the defense. The Court of Appeals erred when it imposed this requirement upon the state.

The state in this instance fully assumed its burden by producing the informer for the *in camera* examination by

---

[4] In view of the fact that this portion of the procedure is denominated as an "opportunity" for the state, we would expect a trial judge, under most circumstances, to accede to the state's request for *in camera* testimony.

the court. This discharges the obligation of the state and insures a mechanism whereby the trial judge can determine whether the informer can give testimony necessary to the fair determination of guilt or innocence. It also assures the state and the informer of non-disclosure if the informer's testimony is not material and relevant on the question of guilt or innocence or, even if it is found to be, the state can protect its informer by dismissing the case. This is the balancing mechanism; and once there is a finding, in the exercise of appropriate judicial discretion, that the informer's testimony is relevant and admissible on an issue material to the accused's defense and, hence, reasonably necessary on the question of guilt or innocence, the balance is irretrievably tipped to the side of disclosure. As *Roviaro* said, at pp. 60–61:

"Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of the accused, *or* is essential to a fair determination of a cause, the privilege *must* give way." (Emphasis supplied.)

*McCray v. Illinois*, 386 U.S. 300, 307, relying upon a New Jersey case, stated that:

"[In] the trial of a criminal charge . . . . the need for a truthful verdict outweighs society's need for the informer privilege."

The determination of the judge after the state makes its showing resolves the balance referred to in *Roviaro*. If the testimony is, in the words of the rule, "necessary" for the fair trial of the defendant or will tend to lead to a truthful verdict, the balance is struck with finality for disclosure. But the process is one requiring the exercise of discretion by the trial judge. The Wisconsin rules identify the decision as a discretionary one. *See*, 59 Wis. 2d R148. *Roviaro*, p. 56, refers to the question before the Court as whether "the trial court had . . . abused its discretion."

Thus, in the instant case, where concededly the defendant made the minimal showing required to trigger the burden placed on the state—the burden of going forward with the evidence in respect to the informer's testimony —the only question is whether the trial judge abused his discretion in reaching the conclusion that the evidence need not be produced.

In *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971), we discussed the process of discretionary decisionmaking. We emphasized that a proper exercise of discretion required a trial judge to consider all the facts of record relevant to the decision. We pointed out that we would support a discretionary decision, even though that decision might not be one this court would initially have made, if we were to conclude that the trial judge considered the appropriate facts and reached a conclusion that was defensible on the basis of reason, *i.e.,* was a conclusion that a reasonable judge could reach under the circumstances and the law.

The trial judge in this case questioned the informer and reached his conclusion on the basis of that testimony. We have had the opportunity to inspect this sealed transcript of testimony. It reveals that the informer was present during the transaction at which Outlaw allegedly delivered drugs to Agent Martine. The informer stated that he had himself been a drug trafficker and was "tired of being chased." He stated that he had been cooperating with law enforcement officials for several years. In respect to the transaction of October 10, he said he had met a person known as Outlaw three or four months before. He stated that he arranged the introduction on October 10 of the agent to three persons who were selling "coke." On the 10th, the informer, in an automobile with Martine, rendezvoused at a drive-in restaurant with Outlaw and two other persons, identified as Tony and Cle Gray. They then went to the men's dormitory. The informer stated that he spent about ten min-

utes in the company of Outlaw at the dormitory and he saw him at the restaurant.

Despite the fact the informer admitted to having been introduced to Outlaw three or four months before, saw him at the restaurant, and admitted to having spent ten minutes with him on the 10th in a dormitory room, he stated that he could not identify photographs of Outlaw, which were shown to him, to be photographs of the person who was at the drug transaction. He also stated that, had he appeared at the trial, he was "not sure" he could say the defendant participated in the drug transaction. In response to the court's question, "And do you think that that inability to identify him now would have been probably the same [at the time of trial]," the informer answered, "Probably; I couldn't say for sure." He then went on to say that he would not have been able to make a positive identification that the defendant was one of the persons present. Although he did not take part in the actual transfer of drugs, it is clear from the *in camera* testimony that he made the telephone call that set up the transaction and witnessed the preliminaries to the transfer and the transfer of one package. He was not a mere tipster; he was a participant.

He said he was in the State of Wisconsin at the time of trial and indicated he could have responded to a subpoena but "would rather not of." In response to the judge's question, he said that, were he required to appear and testify, it would limit his informer activities in the future.[5]

---

[5] He expressed no concern for his safety. It should be pointed out, however, that safety of an informer is not the concern of the trial court. Its concern is to afford a fair trial. The safety of the informer is the responsibility of the state. It has the option of refusing to reveal the identity of the informer. The price it pays for such protection is dismissal of the case. This, however, is a more acceptable sacrifice than to deprive a person of a fair trial.

The circuit judge also interrogated the narcotics officer who

He said, had he appeared, his testimony would not have been helpful to the defense because he would not have been able to identify Outlaw.

In summary, at the *in camera* hearing, the judge stated that it was up to the court of appeals to determine whether the testimony of the informer would be helpful to the defense. He said on the record of the *in camera* proceedings:

"I guess it can be looked at both ways. One, there is an identity question and the other there is a question whether or not unlawful transactions were taking place."

Despite the trial judge's view expressed during the hearing that the informer's testimony could be viewed as helpful to the defendant on the question of identity, though not on the question of whether a transaction took place, the judge in his findings took a different approach in reaching his decision.

After making the specific finding that the informer could not identify Outlaw from the photo lineup and could not have identified him at trial as being the person at the drug transaction, the court reached the surprising conclusion:

"Accordingly, this Court finds that [informer's] testimony at trial would, with reasonable probability, not be helpful to the Defense. The testimony . . . would corroborate other evidence that an unlawful drug transaction

---

was the informer's control. That agent testified the informer had cooperated with the state for over four years, that the informer was "connected" with the October 10 transaction, that he displayed photographs of Outlaw to the informer, but the informer was unable to identify Outlaw as being at the scene. The informer was characterized as being the "most reliable subject with whom I have ever worked" and that, from the viewpoint of the Department of Justice, it was "greatly desirable" that the informer's identity not be revealed. This questioning was inappropriate. The judge's concern should be to protect the integrity of the trial process. That requirement of integrity must not be compromised by what the state thinks desirable.

took place with a party known as John Outlaw. Although [informer] could not have identified John Outlaw, the issue of identity was so convincingly presented by Agent Martine that [informer's] testimony would not, when reviewed in total, be helpful to the defendant."

The court of appeals concluded that this finding constituted an abuse of discretion, because it "disregarded the bright line to be determined; that is, whether the informant's testimony would be beneficial to Outlaw's case." 104 Wis. 2d at 244. It then went on to state, incorrectly as we have pointed out, that it was the burden of the state to show beyond a reasonable doubt that the testimony would not be helpful.

We conclude that the proper test is whether the testimony the informer could have given was relevant and admissible in respect to an issue material to the accused's defense and, hence, was reasonably necessary to a fair determination of guilt or innocence. When that determination is made, the role of the *in camera* judge is at an end. It is not up to the trial judge, under the procedures of sec. 905.10(3)(b), Stats., to determine whether the testimony will in fact be helpful.

Here identity was an issue, and, in the comments of the trial judge during the *in camera* session, he acknowledged that the non-identification testimony would be helpful; but then he went on to state that the additional proof of the illegal drug transaction would be damaging. As we view the case, the fact there was an illegal transaction was not an issue in Outlaw's defense, but identity and alibi were.

We hold that the trial court abused its discretion when it weighed the evidence and concluded that proof of the transaction would be more damaging to Outlaw than evidence of non-identification. As *Roviaro* points out, the facts of the case and the defense offered determine what may be relevant to the defense. Identification was relevant—the fact there was a drug transaction was not. We

cannot conclude that the trial judge reached a rational finding, for he ignored the fundamental issue, identity, to which the informer's testimony would be relevant. Moreover, he viewed the case in hindsight. This perhaps was understandable, for the trial was over; but he hypothesized that, even though the informer would testify that he could not identify Outlaw, Martine had identified him and that Martine's testimony was so convincing that informer's lack of identity would not be helpful to the defendant. But this is sheer speculation. It is speculation in respect to how a jury would have viewed inconsistent testimony—not only the inconsistency between Martine and the informer, but the internal inconsistencies of Martine's testimony as viewed in light of what the informer would say. The informer would have said, we now know, that he could not have placed Outlaw at the scene—this despite the fact he had met Outlaw several months previously, had arranged the meeting, had been with him at the short-order restaurant, had been in his company for ten minutes in the dormitory room, and also saw the trafficker when he delivered an additional packet of drugs to Martine at the car. Informer's exposure to the drug trafficker was substantial. How can a trial judge conclude that the non-identification testimony would be less credible to the jury than Martine's? The judge's finding here, where credibility is an issue, was a usurpation of the function of the jury.

Also, contrary to the language of the court of appeals, what is in fact helpful to the defendant is not a decision that should be made by the trial judge under sec. 905.10 (3)(b), Stats. His duty in the exercise of discretion is, rather, to determine that the testimony the informer could give is relevant and admissible in respect to an issue material to the accused's defense and, hence, is reasonably necessary to a fair determination of guilt or innocence. As *Roviaro* said:

"The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." P. 64.

Here it is apparent that the trial judge recognized that the testimony of the informer was relevant, *i.e.*, the fact that an experienced observer to the drug transaction could not say that Outlaw was present tended to make the fact of Outlaw's participation less likely. *See,* sec. 904.01, Stats. The informer's testimony was therefore relevant on a material issue of the case. In effect, the trial judge decided that the informer's testimony, because it tended to prove the drug transaction, was harmful to the defense. But the proof of the transaction was not integral to the defense. Outlaw's defense was that he was not present at the illegal transaction.

As we view the case, skillful counsel, with the aid of informer's testimony, might have made substantial inroads on Agent Martine's credibility. At various times during the criminal case, Martine had said there were three persons present at the transaction, then four, and finally five. As the case was tried, the two other participants in the transaction refused to testify on fifth amendment grounds. Hence, the defendant was obliged to foresake his constitutional privilege to remain silent in an effort to controvert Agent Martine's testimony. It was Martine's testimony against that of the defendant. Had the informer testified, the jury would have been obliged to confront the question of whether Martine, with his series of inconsistencies, was in fact credible in his assertion that Outlaw was there. The interrogation of the informer by the impartial judge reveals that the informer was highly susceptible to leading questions. A skillful-cross-examiner, with an adversary interest—an interest which the trial judge properly did not have—might well have undermined Martine's credibility in the

eyes of the jury. Whether the defendant would in the final analysis have decided to call the informer was a matter for the defendant and his counsel to decide as a matter of trial strategy. It was for them to decide and not for the judge. They were deprived of the opportunity of interviewing, and perhaps calling as a witness, a material witness to the crime. Once it is determined that the testimony of the informer is reasonably necessary (*i.e.,* is relevant and admissible in respect to an issue material to the defense) to a fair determination of guilt or innocence, the privilege ceases. One thing is clear—it was established that the informer was "able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case" (905.10(3)(b)) as it pertained to John Outlaw.

We conclude that the trial court in failing to make that finding abused its discretion and must be reversed. We conclude, consistent with the decision of the court of appeals, that the case must be remanded for a new trial and that the defendant be given the identity of the informer and the opportunity to call him as a witness if he wishes to.

This determination presents the state with a choice. It now must confront the choice of balancing the value of continued flow of informant information to the state against the realization that the refusal to permit the informer to be called will result in dismissal of the case against Outlaw. This is the state's decision to make. It may preserve the confidentiality of its informer if it wishes to do so, but it cannot do so and also proceed with the case and deprive a defendant of a fair determination of guilt or innocence.

Anyone who has prosecuted cases over a period of time has been confronted with the dilemma of foregoing a particular prosecution, because, in the long run, particular information or a source of information is of

greater importance to the public welfare than a conviction in a particular case. This is not an unusual decision for a prosecutor to make. It is clear that, when the state, for even exemplary purposes, elects to deny a defendant access to information or testimony that is arguably exculpatory, it must forego the prosecution. *Brady v. Maryland*, 373 U.S. 83 (1963) ; *United States v. Agurs*, 427 U.S. 97 (1976).

In summary, then, we conclude that the failure upon request to produce evidence or witnesses, whether an informer or not, that may be favorable to an accused where the evidence is relevant to guilt or innocence violates due process. *Brady v. Marlyand, supra* at 86. Outlaw, therefore, upon demand, had the right, upon the mere showing that the informer was present at the transaction—especially because identity was the defense—to have a determination of whether or not the informer "may be able to give testimony necessary to a fair determination of the issue of guilt or innocence."

The state, upon such showing, because it had control of the informer, then had the option of foregoing the prosecution, because it might know the testimony was relevant and material to a disputed issue and wished to protect its informer, or it might, as it did in this case, after remand by the court of appeals, go forward with the "opportunity" of showing whether the testimony was of a kind that should be produced or not under the guidelines of the evidentiary rule. This was its only burden if it wished to demur to the production of the witness following defendant's initial showing. The state's duty was merely to produce the testimony. It had no burden of proof.

The state produced the witness, and the *in camera* hearing constituted the balancing mechanism between the duty of the state to produce evidence that, on one hand, might be necessary to a fair trial or for the preparation

of the accused's defense and, on the other hand, the privilege of the state to protect an informer. The *in camera* procedure is designed to avoid the "judicial guessing game" in which the United States Supreme Court in *Roviaro* had to indulge. The *in camera* mechanism resolves the balance and is intended to determine with reasonable accuracy whether the informer's testimony is necessary to the defendant's fair trial. If it is, the privilege is at an end, and the state must then balance the desirability of proceeding with a particular prosecution, as compared to suffering the damage of having a trusted informer unmasked.

The decision of the judge after an *in camera* hearing or submission on affidavits is one of judicial discretion; and if discretion is properly exercised in accordance with the facts and proper application of law and a decision is rationally arrived at following such consideration, the decision based upon discretion will be upheld. The question is merely whether the testimony may be necessary to a fair trial.

Under the facts here, part of the testimony was necessary, *i.e.*, the part relevant to identity. Whether the testimony would likely be helpful to the accused is a matter for defense strategy, not for the court or for the state. We believe that the facts skillfully elicited by the trial judge which tended to show that the informer, ostensibly an experienced observer, could not identify Outlaw, if used at trial, would be useful in undermining Agent Martine's credibility. But, again, once it is established that the informer would testify on an issue that is relevant and material to the defense, *i.e.*, that the testimony is reasonably necessary, whether the use of the testimony would be helpful is for the defense to decide. Moreover, the credibility of the informer's testimony is for the jury, not for the judge. The judge's function, if it cannot be said that the proffered testimony is in-

credible as a matter of law, is similar to that in any jury case. The judge's duty is merely to determine competency, relevancy, and finally admissibility. The jury alone has the function of assessing weight and credibility.

We agree with the state's objection to the Court of Appeals placing the burden "beyond a reasonable doubt" upon the state to show that the testimony would not be helpful. It has no burden beyond the production of the testimony by affidavit or the person of the informer *in camera*. Here the state availed itself of the opportunity afforded and produced the informer. The decision of the trial judge, based on speculation about the effect of the informer's testimony on the jury and his conclusion that the added proof that there was an illegal drug transaction would be damaging to the defense, usurped both the function of the jury and of defense counsel. The trial judge's decision was the result of an abuse of discretion.

Because identity was a paramount issue and the necessary testimony of the informer would have tended to make the identification of Outlaw as the person at the scene of the crime less probable, the relevancy and materiality (sec. 904.01, Stats.) of the informer's testimony permeated all three counts charged. In all three counts, the credibility of Agent Martine was the linchpin of the state's case. Because the state chose to try these cases together, the error permeated all counts; and we therefore agree with the decision of the court of appeals reversing the circuit court's judgment in its entirety. *People v. Durazo*, 52 Cal. 2d 354, 356, 340 P.2d 594 (1959).

*By the Court.*—Decision affirmed.

WILLIAM G. CALLOW, J. *(concurring)*. I agree with that portion of the majority opinion dealing with the burden of proof issue. "There is no requirement that the state show beyond a reasonable doubt that the informer's testimony would not be helpful to the defense." *Supra,* at 127.

I emphatically disagree with that portion of the majority opinion which establishes the scope of review of a trial judge during an in camera hearing: "We conclude that the proper test is whether the testimony the informer could have given was relevant and admissible in respect to an issue material to the accused's defense and, hence, was reasonably necessary to a fair determination of guilt or innocence." *Supra*, at 132. I do not believe that relevant and admissible in respect to an issue material to the accused's defense is the equivalent of reasonably necessary to a fair determination of guilt or innocence.

Sec. 905.10(3)(b), Stats., clearly specifies that after an in camera inquiry the trial judge determines if there is a reasonable probability that the informer can give testimony *"necessary* to a fair determination of the issue of guilt or innocence in a criminal case." (Emphasis added.) The statute does not use the words "admissible," "relevant," or "helpful." As I see it, there is a significant difference between these terms; something may be relevant and admissible, but not necessary. Only if an informant's testimony is necessary to a fair trial will the informer's privilege give way. Although federal cases use the language relevant and helpful, the majority has correctly noted that "federal authorities are not of controlling precedential significance." *Supra*, at 121. The majority also correctly states: "[T]he Wisconsin [informer's privilege] rule is distinctly a product of Wisconsin Supreme Court rule making." *Supra*, at 120.

Although sec. 905.10(3)(b), Stats., does not define "necessary,"[1] federal cases shed light on the meaning of

[1] Necessary, by common dictionary definition means "essential," "indispensable," "absolutely required," "that [which] cannot be done without." *Webster's Third International Dictionary*, 1510–11 (1966). As I interpret sec. 905.10(3)(b), Stats., only if an informer's testimony is essential or indispensable must the informer's identity be compelled. *See Stelloh v. Liban*, 21 Wis. 2d 119, 126,

that term. I believe an informer's testimony is necessary if it "could have created in the minds of the jurors a reasonable doubt" regarding a defendant's guilt. *United States v. Eddings*, 478 F.2d 67, 72 (6th Cir. 1973). This is a discretionary decision for the trial judge to make. *Stelloh v. Liban*, 21 Wis. 2d 119, 126, 124 N.W.2d 101 (1963). *Supra*, at 128.

In my opinion, the informer's testimony, revealing that he could not positively identify the defendant, "could have created in the minds of the jurors a reasonable doubt" regarding the defendant's guilt. Accordingly, the trial judge abused his discretion in failing to compel disclosure of the informer's identity.

The trial court was not in error in following that portion of the direction of the court of appeals which required disclosure only if it were helpful to the defense. The court of appeals construed sec. 905.10(3)(b), Stats., to require disclosure only if the informer's testimony were found to be relevant and helpful to the defense. The "relevant and helpful" terminology ignores the language of the statute denominating "necessary to a fair determination of guilt or innocence" as the proper standard. A rational interpretation of this language does not require the conclusion that the informer's identity be disclosed to the defendant if it is probative only of the guilt of the defendant.

Following the reasoning of the majority opinion, a defendant need only convince the judge that the informer has information which is relevant and admissible in respect to an issue material to the accused's defense. If the in camera inquiry results in the judge concluding the

124 N.W.2d 101 (1963), where we noted that the American Law Institute, *Model Code of Evidence*, Rule 230 at 168, provides that the identity of an informer should be disclosed if it "is *essential* to assure a fair determination of the issues." (Emphasis added.) *See also Roviaro v. United States*, 353 U.S. 53, 61 (1957) ("essential to a fair determination of a cause").

informer can positively identify the defendant, such testimony meets the test enunciated by the majority. I would limit the test to evidence being necessary to *support* the theory of the defense. Therefore, where identification is at issue, I would declare the evidence is not necessary to the theory of mistaken identity where the informer can identify the defendant with reasonable certainty as the participant in criminal activity. In the instant case, the trial judge was not faced with such a situation and made his determination on other grounds, but I set forth this possible situation to identify the need to limit the test. A defendant who knows the available evidence of his guilt is overwhelming may insist upon disclosure of the informer's identity solely as a retaliatory move or in the interests of his peers in order to thwart the informer's effectiveness in the future.

This limitation is essential because it "is well to remember that the illegal traffic in narcotic drugs poses a most serious social problem . . . . No crime leads more directly to the commission of other offenses. Moreover, it is a most difficult crime to detect and prove . . . . Enforcement is, therefore, most difficult without the use of . . . informants . . . . To give [informants] protection governments have always followed a policy of nondisclosure of their identities . . . . Of course *where enforcement of a nondisclosure policy deprives an accused of a fair trial it must either be relaxed or the prosecution must be foregone." Roviaro v. United States,* 353 U.S. at 66–67 (Clark, J. dissenting) (emphasis added).

I specifically reject that language in the majority opinion stating the proper test for disclosure of an informer's identity to be whether the informer's testimony was relevant and admissible to a material issue. I conclude that an essential condition precedent to disclosure is that the informer's testimony be necessary to the defense. Furthermore, when nondisclosure deprives an accused of a fair trial, when indeed disclosure is neces-

sary as it could create a reasonable doubt of the defendant's guilt in the jurors' minds, then and only then should this important privilege give way.

I am authorized to state that Justices DAY, STEINMETZ, and CECI, join in this concurring opinion.

STEINMETZ, J. *(concurring).* I concur with the opinion of Justice William G. Callow in his statement of the proper test to be applied by a trial judge when determining whether the identity of an informant will be disclosed upon demand of the defendant.

I would add that in determining whether the testimony of an informant is necessary, the judge should determine whether that testimony and resulting evidence would be merely cumulative in regard to other evidence available or already produced. If it is merely cumulative, then it is not necessary for a fair determination of guilt or innocence. In addition, whether evidence from an informant is necessary, may be determined by whether the same information or evidence is available from another source or other sources.

I am authorized to state that Justices ROLAND B. DAY, WILLIAM G. CALLOW and LOUIS J. CECI join in this concurring opinion.