ANN WALSH BRADLEY, J.
¶ 37. (dissenting). I agree with the majority that the required showing for an in camera review is whether an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence.
¶ 38. I write separately, however, because I disagree with the majority's application of the test. The majority errs in two significant ways: (1) it appears to up the ante of the necessary showing for those seeking an in camera review and (2) it conflates the showing necessary to get an in camera review with what a court must determine after the review has occurred.
*514 ¶ 39. These errors provide unclear and inaccurate guidance for circuit courts to follow. Further, they permit the majority to deny Nellessen an in camera review when the showing she made was sufficient to require one.
¶ 40. Contrary to the majority, I focus on the inquiry relevant to determining if an in camera review need be held: whether there is a reasonable possibility that the informer's testimony may be necessary for a fair determination of the issue of guilt or innocence. Because I conclude that Nellessen's motion was sufficient to obtain an in camera review, I respectfully dissent.
I
¶ 41. At the outset the majority properly sets forth the text of the statute. Citing to State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110, it emphasizes the need to "give the statutory language its 'common, ordinary and accepted meaning.'" Majority op., ¶ 23 n.8.
¶ 42. Wisconsin Stat. § 905.10(3)(b) in relevant part provides:
If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case . . . and the ... state or subdivision thereof invokes the privilege, the judge shall give the . . . state or subdivision thereof an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony.
Wis. Stat. § 905.10(3)(b) (emphasis supplied).
¶ 43. Relying on the seminal case, State v. Outlaw, 108 Wis. 2d 112, 321 N.W.2d 145 (1982), the *515 majority makes multiple comments expressing that the defendant's burden to obtain an in camera review is low. Majority op., ¶ 19 ("The Defendant's Initial Showing under Wis. Stat. § 905.10(3)(b) Is A Modest One," "we have been clear that the initial showing by a defendant 'is light indeed,' and 'does not place a significant burden upon' the defendant"). The majority observes that "the showing a defendant must make to trigger an in camera review 'need only be one of a possibility that the informer could supply testimony necessary to a fair determination' of the defendant's guilt or innocence." Id. (quoting Outlaw, 108 Wis. 2d at 126) (emphasis supplied). The majority further acknowledges that "the nature of a confidential informer makes it impossible to know the specific information that the informer will have," and that "speculation [is] inherent in the language of § 905.10(3)(b)." Id., ¶ 24.
¶ 44. Based on the plain word of the statute, "may," together with the directive from Outlaw that the showing need be only a "possibility," the majority correctly frames the test for obtaining an in camera review: "whether it 'appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence.'" Id., ¶ 22 (quoting Wis. Stat. § 905.10(3)(b)) (emphasis in original).
¶ 45. The majority acknowledges that obtaining an in camera review is merely the first step in determining whether the identity of an informer must be revealed. After the in camera review, the court must determine whether there is a reasonable probability that the informer will have testimony necessary for the defense. Id., ¶ 30 n.ll.
*516 II
¶ 46. After properly setting forth the test, the majority goes astray in its application of the test to Nellessen. It reasons that although motions under Wis. Stat. § 905.10(3)(b) will necessarily be speculative, Nellessen's motion fails because it is speculative: "Nellessen's entire motion is speculative, and she fails to sufficiently ground her assertion in the facts and circumstances of the case." Id., ¶ 33.
¶ 47. By acknowledging that the showing requires speculation, but determining that Nellessen's motion was insufficient because it was too speculative the majority sets a confusing standard for courts to follow.
¶ 48. Nellessen's motion was grounded in the facts and circumstances of the case to the extent possible. It referred to the information she had available to her — the detailed information the informer had provided — and asserted that due to the details already provided, the informer must have more knowledge about how the marijuana got into her trunk.
¶ 49. Nevertheless, the majority accuses Nellessen of not sufficiently referencing the facts and circumstances of the case. Id., ¶ 34. It fails to acknowledge that at this stage of the proceeding, a defendant will not have any information about the informer other than the State's representation of what the informer has stated. By requiring a defendant's motion to contain more detail in order to obtain an in camera hearing, the majority appears to unduly increase the burden on a defendant beyond the lenient test it previously embraced.
¶ 50. The majority's application is also problematic as it appears to conflate the two different steps of *517 the procedure set forth in Wis. Stat. § 905.10(3) for revealing the identity of an informer. This court has interpreted the statute as creating a two-step procedure. Majority op., ¶ 30 n.ll. In the first step, the court must determine whether to conduct an in camera review. That decision is the one at issue in this case, which is described in the majority's analysis. After conducting an in camera review, the second step requires the court to determine whether to reveal the identity of the informer. This second part of the procedure looks at "whether there is a reasonable probability that the informer can give the testimony necessary to a fair determination." Outlaw, 108 Wis. 2d at 127.
¶ 51. The majority's conflation of the first and second steps of the procedure is apparent in its declaration that "[g]iven the strength of the evidence against Nellessen, the circuit court could reasonably conclude that the informer's testimony would not be necessary to the defense because it could not " 'have created in the minds of the jurors a reasonable doubt' regarding a defendant's guilt." Majority op., ¶ 33.[1] The only way the court could have determined that the strength of the State's case could not be overcome by *518 the testimony of the informer would be for it to somehow know the contents of that testimony. That knowledge, however, comes from conducting an in camera review.
¶ 52. As the court of appeals has explained, it is difficult for a circuit court to determine the value of disputed evidence without first conducting an in camera inspection:
It may well be that the evidence contained in the psychiatric records will yield no information different from that available elsewhere. However, the probability is equally as great that the records contain independently probative information. It is also quite probable that the quality and probative value of the information in the reports may be better than anything that can be gleaned from other sources. Finally, the information might well serve as a confirmation of [the victim's] reality problems in sexual matters. It is the duty of the trial court to determine whether the records have any independent probative value after an in camera inspection of the records.
State v. Shiffra, 175 Wis. 2d 600, 611, 499 N.W.2d 719 (Ct. App. 1993) (emphasis in original). By weighing the proposed testimony against the strength of the State's case, before the contents of that testimony are even known, the majority inappropriately jumps to the second step of the procedure for revealing the identity of an informer.[2]
¶ 53. Further underscoring that it is conflating the two steps of the procedure, the majority reasons *519 that providing Nellessen with an in camera review "would effectively allow the exception to the confidential informer privilege to nullify the privilege altogether." Majority op., ¶ 34. However, that would be the case only if the majority were analyzing whether to reveal the identity of the informer.
¶ 54. At this initial step, the court is to determine merely whether to conduct an in camera review. That is whether there is a possibility that the informer could supply testimony necessary to a fair determination of guilt or innocence. Determining whether to hold an in camera review should not be equated with revealing the identity of an informer. That decision is not made until after the review. It inquires whether there is a reasonable probability that an informer can give testimony necessary to a fair determination. The necessary showings are different.
Ill
¶ 55. Contrary to the majority, I conclude that Nellessen met her burden to obtain an in camera review. As the majority observes, the burden to obtain an in camera review is light. Majority op., ¶ 19. "The showing need only be one of a possibility that the informer could supply testimony necessary to a fair determination." Outlaw, 108 Wis. 2d at 126. Outlaw explained that the phrase "necessary to a fair determination" means "necessary to support the theory of the defense." Id. at 141 (emphasis in original).
¶ 56. In this case Nellessen is charged with possession with intent to deliver THC in violation of Wis. Stats. §§ 961.41(lm)(h)2, 939.50(3)(h), 939.05. Her defense is that she did not know the marijuana was in *520 the trunk of her car. Part of that defense necessarily includes that she was not present when the marijuana was placed in her car.
¶ 57. Nellessen's motion stated that due to the detailed information the informer gave to the police about her car and the marijuana in it, the informant "must have had information about the transmission of the controlled substances from their original location to the defendant's vehicle." This is a logical conclusion.
¶ 58. According to Detective Cramm's testimony, the informer had identified Nellessen's car, indicated that it would be traveling from Minnesota through Marshfield to Stevens Point on the date in question, and stated that there would be a pound of marijuana in the car. The detail of the information that the informer provided indicates a familiarity with the facts and suggests that the informer likely had more information about how the marijuana got into Nellessen's car.
¶ 59. The information Nellessen seeks from the informer is not necessarily cumulative. Although there are no witness statements in the record indicating whether Nellessen was present while the marijuana was loaded into her trunk, the majority speculates that the information sought is cumulative because another witness, Rico Scott, could provide information about the transmission of the marijuana to Nellessen's car. Majority op., ¶ 31. However, merely because it is asserted that Scott could provide the information does not mean that he will. Scott's own involvement with loading the marijuana into Nellessen's car may affect his willingness to testify.
¶ 60. Nellessen was required to show only a reasonable possibility that the informer might have information necessary to her theory of the defense. Cf Shiffra, 175 Wis. 2d at 612 (defendant's showing vic *521 tim's "difficulties might affect both her ability to accurately perceive events and her ability to relate the truth" sufficient to obtain an in camera review of her medical records (emphasis supplied)). Her motion and the record made that showing. It appears reasonably possible that the informer here had information on how the marijuana got into Nellessen's vehicle. That information is necessary to support Nellessen's defense that she had no knowledge the marijuana was in her car. Thus, I would affirm the court of appeals and remand for an in camera review.
IV
¶ 61. In sum, the majority errs when it appears to raise the burden on Nellessen and conflates the first and second step of the procedure to reveal the identity of an informer. These errors provide unclear and inaccurate guidance for circuit courts and litigants.
¶ 62. Contrary to the majority, I focus on the first step of the Wis. Stat. § 905.10(3)(b) procedure, whether there is a reasonable possibility that the informer's testimony may be necessary for a fair determination of the issue of guilt or innocence. Because I conclude that Nellessen's motion was sufficient to obtain an in camera review, I respectfully dissent.
¶ 63. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.

 The majority's application is also problematic because it interprets the phrase "evidence in the case" in Wis. Stat. § 905.10(3)(a) as permitting a circuit court to consider evidence presented at the preliminary hearing. There is no analysis and no attempt to explain how the majority arrives at this conclusion. It does not attempt to apply State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI58, 271 Wis. 2d 633, 681 N.W.2d 110, but instead makes an unsupported assertion.
Neither of the parties pointed to the evidence from the preliminary hearing or suggested that a consideration of that evidence was appropriate. It is folly to interpret a statute without any briefing, oral argument, or analysis supporting the interpretation.

 further note that it may be questionable that the court should be weighing the evidence at all. See Best Price Plumbing, Inc. v. Erie Ins. Exch., 2012 WI 44, ¶ 53, 340 Wis. 2d 307, 814 N.W.2d 419 ("[q]uestions about the weight and credibility of evidence are reserved for the trier of fact.").